G. Douglas BURCK and Marjorie W. Burck, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 452, Docket 75–4163.

United States Court of Appeals, Second Circuit.

Argued Dec. 11, 1975.

Decided March 4, 1976.

Bradford S. Magill, Greenwich, Conn. (Joseph W. Barnett, Jr., and Magill, Badger, Fisher, Cohen & Barnett, Greenwich, Conn., of counsel), for appellants.

Stanley S. Shaw, Jr., Atty., U.S. Dept. of Justice, Washington, D.C. (Scott P. Cramp-ton, Asst. U.S. Atty. Gen., Gilbert E. Andrews and Elmer J. Kelsey, Attys., U.S. Dept. of Justice, Washington, D.C., of counsel), for appellee.

Before OAKES, VAN GRAAFEILAND and MESKILL, Circuit Judges.

OAKES, Circuit Judge:

This case arises out of the ever-present potential for arbitrariness and evasiveness which is inherent in the cash-basis method of income tax accounting. The specific feature of this general problem brought for review here concerns the deductibility of a year-end transfer of over $300,000 from a taxpayer[1] to his bank, purportedly made as a prepayment of one year's interest expense accruing on an outstanding loan over the course of the next tax year. The United States Tax Court, William M. Fay, *Judge*, held that the prepayment was an interest expense in the year the payment was made under Section 163(a) of the Internal Revenue Code, 26 U.S.C. § 163(a), but also ruled that the Commissioner did not abuse his discretion under Section 446 of the Code, 26 U.S.C. § 446, by applying the accrual method of accounting to the payment and disallowing all of the deduction representing interest expense accruing in the succeeding tax year. *Burck v. Commissioner*, 63 T.C. 556 (1975). Since the payment at issue concerned a loan made on December 29, 1969, the Commissioner allowed the taxpayer to deduct only 3/365 of the total payment on his 1969 income tax return. On the taxpayer's appeal, we affirm.

Appellant has consistently used the cash receipts and disbursements method of income tax reporting in preparing his return. His taxable incomes for 1967 and 1968 had been $46,000 and $49,000 respectively. In 1969, however, he realized a long term capital gain of $968,000. At year's end in 1969 he entered into negotiations with a Michigan bank, Bank of the Commonwealth (which evidently could use income of its

---

1. Although this appeal involves the joint return of G. Douglas and Marjorie W. Burck, for the sake of simplicity we shall refer to them collectively as "the taxpayer" and "the appellant."

own to offset some available deductions), that culminated in a loan transaction having the following agreed-upon features:

1. The taxpayer was to borrow $5,388,600 from the Michigan bank on December 29, 1969 (the "Michigan loan"). Of this sum, $2,388,600 was to be left in a non-interest bearing account at the Michigan bank. The remaining $3,000,000 from the Michigan loan was then to be disposed of as follows: (A) $2,000,000 was to be loaned by the taxpayer to the Comac Company, a partnership in which he held no proprietary interest, at a 12 per cent rate of interest; (B) $1,000,000 was to be transferred to the taxpayer's existing account in a New York bank (which prior to transfer had a credit balance of $42,000). It was understood that before the end of the year (i. e., within the next two days) the taxpayer would retransfer the sum of $377,202 from his New York account to the Michigan bank as one year's "prepaid interest" on the Michigan loan (7 per cent of the loan amount).[2] The taxpayer was then to use the remaining portion of the Michigan loan on deposit in his New York account for (1) an additional loan of $350,000 to the Comac Company at 12 per cent; (2) purchase of a $100,000 interest in an Ohio partnership; and (3) purchase of a $150,000 interest in a personal residence for the taxpayer. The remaining $22,798 of the $1,000,000 transfer to the New York

bank was to be retained in his account at the bank.

2. The taxpayer was to sign two promissory notes for the Michigan bank, both at a stated interest rate of 7 per cent. The first note was for $3,000,000, half of which was payable on January 4, 1971, with the balance due on March 31, 1972. This note was secured by a pledge of approximately 120,000 shares of stock in National Student Marketing Corp. The second note, in the amount of $2,388,600, was a demand note secured by the taxpayer's deposit of that same amount in the non-interest bearing account at the Michigan bank.

All of the steps in this transaction were executed by the parties pursuant to their agreement. This appeal concerns the effects of the transaction on the appellant's tax liability for 1969.

The taxpayer's 1969 return showed a gross income of $1,049,600, which included the $968,000 capital gain. After deductions, including a claimed deduction of $377,202 for the "prepaid interest" expense, the taxable income was $41,383. The Commissioner's disallowance of the interest deduction resulted in a deficiency of $245,956.55.

Tax Court Judge Fay found that the taxpayer did prepay one year's interest on the notes so as to be entitled to an interest deduction under § 163(a).[3] But he found that the Commissioner had properly exer-

---

2. At the time of the transfer, taxpayer's net worth exclusive of the collateralized stock and cash was well in excess of $377,000 "interest."

3. The writer of the opinion, for himself only, disagrees and would hold that the transfer of funds from the Michigan bank to taxpayer's New York account and the simultaneous retransfer pursuant to prearrangement was a transaction without business substance. Goldstein v. Commissioner, 364 F.2d 734 (2d Cir. 1966), cert. denied, 385 U.S. 1005, 87 S.Ct. 708, 17 L.Ed.2d 543 (1967). Viewing the transaction as having the effect of creating a "discounted loan," I conclude that there was no payment of interest by taxpayer within the meaning of 26 U.S.C. § 163(a) until actual repayment of the loan. See Keith v. Commissioner, 139 F.2d 596 (2d Cir. 1944); Cleaver v. Commissioner, 6 T.C. 452, aff'd, 158 F.2d 342 (7th Cir. 1946), cert.

denied, 330 U.S. 849, 67 S.Ct. 1093, 91 L.Ed. 1293 (1947); Hopkins v. Commissioner, 15 T.C. 160, 180–82 (1950); Rev.Rul. 75–12, 1975–2 Cum.Bull. 6. The Tax Court relied on Burgess v. Commissioner, 8 T.C. 47 (1947), for the proposition that commingling the amount transferred with other funds of taxpayer, coupled with his net worth being in excess of the amount required to be paid in interest, note 2 supra, made the interest payment genuine. The writer, however, agrees with the First Circuit that the reasoning of the dissenters in Burgess seems more persuasive. Goldstein v. Commissioner, 267 F.2d 127, 131 (1st Cir. 1959). I would hold that there was no payment of interest in 1969, there was only a giving of notes to evidence an obligation to pay interest in futuro. See Cleaver v. Commissioner, supra; Keith v. Commissioner, supra.

cised his authority under Section 446[4] when he disallowed the major portion of the deduction in order clearly to reflect taxpayer's income. With this we agree.

Taxpayer makes three principal arguments on this appeal. The first is that no material distortion in income would result from allowance of the deduction here; the second is that neither Section 446(b) of the Code nor Regulation 1.446–1(a)[5] gives the Commissioner power to disallow the deduction of prepaid interest in the year paid; the third is that the Commissioner abused his discretion in this instance. We will treat them seriatim.

■ The first argument is that the cash method of accounting used by appellant here for his prepaid interest expense deduction does "clearly reflect income" within the meaning of Section 446(b). The taxpayer argues that since his 1969 income had been vastly "distorted" by the nonrecurring capital gain of almost $1,000,000, the allowance of the interest deduction (and presumably other deductions as well) is necessary to reduce his taxable income to the $40,000 range where it had been for several years. Appellant claims that the prepaid interest deduction, rather than distorting his income, is necessary to normalize his income and thereby "clearly reflect" it. While this argument is ingenious it is also fallacious. We do not accept appellant's suggestion that it is appropriate to allow extraordinary deductions which would be distorting in the case of a level-income taxpayer but which have a "normalizing effect" when employed by a taxpayer with fluctuating income. The appellant's 1969 income was increased by a large long term capital gain. Such capital gains receive preferential treatment in our tax code predominantly for the purpose of ameliorating the harsh effects of taxing what may be several years of appreciation of a capital asset that is recognized at the time of a sale or exchange in a single year.[6] Nowhere does the history or reasoning of Sections 163 and 446 suggest that Congress intended to permit extraordinary prepayment of in-

4. § 446. *General rule for methods of accounting*

(a) *General Rule.*—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

(b) *Exceptions.*—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.

(c) *Permissible Methods.*—Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting—

(1) the cash receipts and disbursements method;

(2) an accrual method;

(3) any other method permitted by this chapter; or

(4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary or his delegate.

5. Section 1446–1. General rule for methods of accounting.

(a) *General rule.* (1) Section 446(a) provides that taxable income shall be computed under the method of accounting on the basis of which a taxpayer regularly computes his income in keeping his books. The term "method of accounting" includes not only the overall method of accounting of the taxpayer but also the accounting treatment of any item. Examples of such over-all methods are the cash receipts and disbursements method, an accrual method, combinations of such methods, and combinations of the foregoing with various methods provided for the accounting treatment of special items. These methods of accounting for special items include the accounting treatment prescribed for research and experimental expenditures, soil and water conservation expenditures, depreciation, net operating losses, etc. Except for deviations permitted or required by such special accounting treatment, taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books. For requirement respecting the adoption or change of accounting method, see section 446(e) and paragraph (3) of this section.

6. The preferential treatment of capital gains is provided, of course, whether the accretion in value occurs in six years or six months. Another asserted justification for the preferential treatment of capital gains is that it serves the economic goal of maximum mobility of invested capital. *See* 3B Mertens, Law of Federal Income Taxation § 22.01 (1973 ed.).

terest to be employed as part of its preferential treatment of capital gains income. We must assume to the contrary, that Congress intended to exhaust its concern over unusual fluctuations of capital gains income in the provisions of the Code expressly adapted to that purpose. We wholly reject the notion that a substantial capital gain is a "distortion of income" which justifies distorting transactions on the deduction side to "normalize" appellant's tax burden. Rather, we conclude that capital gains are "real" income which should properly be reflected in a taxpayer's tax liability, and not "normalized" away by use of extraordinary accounting devices made available only to those who suffer the mixed pleasures of receiving such gains. In our view, therefore, the sole question for our review here is whether the reporting and taxation of the taxpayer's income (including his capital gains) was materially distorted by his claimed deduction for a substantial year-end prepayment of interest expense to accrue over the succeeding tax year.[7] This question engages two issues: (1) the applicability of Section 446 and Regulation 1.446–1(a) to prepaid interest expense and (2) the propriety of the Commissioner's exercise of his discretion to apply the restraints of those provisions in this particular case.

■ The taxpayer argues that the Commissioner's power under Section 446 is limited by its terms to requiring a taxpayer to employ a "method of accounting" which clearly reflects the taxpayer's income. He contends that the Commissioner may not select one item of income or expense and require a different accounting method as to that item than as to all other items on the taxpayer's return. We do not read Section 446 so narrowly. As early as the 1916 Act when express authority was granted to taxpayers in Section 8(g) to use bases other than "actual receipts and disbursements"[8] for reporting their income, the caveat— "unless such other basis does not clearly reflect his income"[9]—was already included. Clear reflection of income is a prerequisite to the use of any method of accounting. As the Supreme Court said in *Lucas v. American Code Co.,* 280 U.S. 445, 449, 50 S.Ct. 202, 203, 74 L.Ed. 538, 540 (1930), "the direction that net income be computed according to the method of accounting regularly employed by the taxpayer is expressly limited to cases where the Commissioner believes that the accounts clearly reflect the net income." In order to assure accuracy in the difficult, particular determination whether the taxpayer's income is clearly reflected, it has been necessary to recognize that the Commissioner must be given "[m]uch latitude for discretion" in his analysis of the taxpayer's accounting methodology. *Id.* Thus, even where the Commissioner has concluded that a taxpayer's method of accounting does not clearly reflect income as to only one year or only one item out of several, the Tax Court has held that the

7. We cannot agree with taxpayer that our inquiry under Section 446 is in any way narrowed by the provisions of Section 461. Section 461(a) provides generally that deductions shall be taken for the taxable year "which is the proper taxable year under the method of accounting used in computing taxable income." The special exceptions listed in § 461(b)–(f), taxpayer points out, do not deal with distortion of income except that subsection (e) disallows to mutual savings and cooperative banks and savings and loan associations deductions for interest or dividends paid as such to depositors on their deposits or withdrawable accounts "to the extent such amounts are paid or credited for periods representing more than 12 months." This *exclusio unius* argument, however, if valuable in some areas, is wholly unreliable in tax statute construction. The tax laws are such a hodgepodge of exceptions, qualifications, special interests and sometimes logically inconsistent treatment that they cannot be treated as symmetrical exigeses. The fundamental qualification that accounting methods must "clearly reflect income as defined by the Internal Revenue Code," 2 Mertens, *supra* note 6, § 12.01, at 6, must take precedence over specific adjustment sections such as § 461.

8. *See* 2 Mertens, *supra* note 6, § 12.05.

9. *Id.* at 16 n. 34.

Section 212(b) of the 1918 Act eliminated the statutory reference to "actual receipts and disbursements" and adopted what was the general rule as to accounting methods until the 1939 Code § 41 adopted what is essentially the 1954 rule contained in § 446(a) and (b).

Commissioner may order use of a different accounting method as to that year or that item alone. *S. Garber, Inc.,* 51 T.C. 733 (1969); *Ezo Products Co.,* 37 T.C. 385 (1961); 2 Mertens, Law of Federal Income Taxation § 12.05, at 18–20 (1974 ed.). We find that these results, which have been incorporated in the applicable Treasury Regulations, *see* note 5, *supra,* appropriately recognize the need for attention in detail to the various business and accounting devices a taxpayer may employ to avoid clear statement of his income. We uphold the construction of Code § 446 in Reg. 1.446–1(a) insofar as it provides that the statutory term "method of accounting" includes "not only the over-all method of accounting of the taxpayer but also the accounting treatment of any item."

We further hold that prepaid interest expense, just as in the case of any other substantial prepaid item, may, in individual situations, appropriately be recognized by the Commissioner as an item which materially distorts the reporting and taxation of a cash-basis taxpayer's income. The Tax Court found that appellant's prepayment of interest was a valid, deductible expense because the underlying loan transaction served a legitimate business purpose.

Other cases have been cited to us which have allowed a prepaid interest expense deduction to a cash-basis taxpayer despite the Commissioner's claim that a material distortion of income resulted. *Fackler v. Commissioner,* 39 B.T.A. 395 (1939), acquiesced in 1939–1 Cum.Bull. 11, *followed in Court Holding Co. v. Commissioner,* 2 T.C. 531 (1943), acquiesced in 1943–1 Cum.Bull. 5. In 1945, as a result of these cases, the Commissioner announced that he would no longer challenge taxpayer's deductions for prepayment of interest due over periods of less than five years. I.T. 3740, 1945–1 Cum. Bull. 109. In 1968, however, the Commissioner found it necessary to revise his position in this matter "[i]n view of certain abuses which have arisen with respect to prepayment of interest by taxpayers using the cash receipts and disbursements method of accounting. . . ." Rev.Rul. 68–643, 1968–2 Cum.Bull. 76.[10] Under the new Ruling, the Commissioner announced that prepaid interest expense deductions for periods as short as 12 months or less would be examined on a "case by case basis," according to factors set forth in the Ruling, to assure that no material distortion of income results from the deduction. *Id.* This Ruling was relied on by the House Ways and

10. Rev.Rul. 68–643, 1968–2 Cum.Bull. 76, states in part:

In view of certain abuses which have arisen with respect to prepayment of interest by taxpayers using the cash receipts and disbursements method of accounting, the Service has reexamined its position in I.T. 3740. The Service now concludes that the deduction of prepaid interest in the year of payment by a taxpayer employing the cash receipts and disbursements method of accounting may not result in a clear reflection of income for the taxable year of payment. A deduction for interest paid in advance on each indebtedness for a period not in excess of 12 months of the taxable year immediately following the taxable year in which the prepayment is made will be considered on a case by case basis to determine whether a material distortion of income has resulted. Some of the factors to be considered in determining whether the deduction of prepaid interest gives rise to a material distortion of income include but are not limited to the amount of income in the taxable year of payment, the income of previous taxable years, the amount

of prepaid interest, the time of payment, the reason for prepayment, and the existence of a varying rate of interest over the term of the loan. If interest is prepaid for a period extending more than 12 months beyond the end of the current taxable year, the deduction of such prepaid interest in the taxable year of payment will be considered as materially distorting income. Where a material distortion of income has been found to result from the deduction of prepaid interest, the Service will require the taxpayer to change his method of accounting with respect to such prepaid interest in order to allocate it over the taxable years involved.

The Service will no longer follow the contrary decisions in *John D. Fackler v. Commissioner,* 39 B.T.A. 395 (1939), acquiescence, C.B. 1939–1 (Part I), 11, and *Court Holding Co. v. Commissioner,* 2 T.C. 531 (1943), acquiescence, C.B. 1943, 5. Acquiescence in each of those court decisions is being withdrawn and non-acquiescence substituted therefor. . . .

Means Committee in its deliberations over the 1969 Tax Reform Act. *See* H.R.Rep. No. 91–413 (Part 1), 91st Cong. 1st Sess., 73; 1969–3 Cum.Bull. 200, 246. The treatment it affords prepaid interest is consistent with that afforded to prepaid rent, *see Main & McKinney Building Co. v. Commissioner,* 113 F.2d 81 (5th Cir.), *cert. denied,* 311 U.S. 688, 61 S.Ct. 66, 85 L.Ed. 444 (1940), and prepaid insurance premiums, *Commissioner v. Boylston Market Association,* 131 F.2d 966 (1st Cir. 1942). *See* H.R.Rep. No. 91–413 (Part 1), *supra.* In view of the Commissioner's undeniably valid concern with limiting abuses of accounting methods and assuring that taxpayers' incomes are clearly reflected in their returns, we have no doubt that it was well within the Commissioner's authority to issue Revenue Ruling 68–643. The inconsistency between the 1945 and 1968 Rulings of the Commissioner is of no importance since the Commissioner may, of course, correct a mistake of law in his Rulings. *Dixon v. United States,* 381 U.S. 68, 73–75, 85 S.Ct. 1301, 1304–1305, 14 L.Ed.2d 223, 227–228 (1965). To the extent that *Fackler v. Commissioner, supra,* and *Court Holding Co. v. Commissioner, supra,* are not in agreement with the 1968 Ruling, we agree with *Sandor v. Commissioner,* 62 T.C. 469, 476 (1974), that those cases no longer state the law on the matter. The only issue left for our review in this case, therefore, is whether the Commissioner has abused his discretion in his determination, pursuant to Rev. Ruling 68–643 and Reg. 1.446–1(a), that the appellant's claimed deduction for prepaid interest expense resulted in a failure clearly to state his income.

▆ Examining the factors set forth in Rev.Rul. 68–643, *see* note 10 *supra,* we conclude that there was no abuse of discretion in the Commissioner's finding in this case. The amount of gross income in the taxable year of payment was 11 times that of the year before and that of several years before. The amount of prepaid interest, $377,202, was several times taxpayer's gross income in years just prior thereto. The payment was made by the transfer from the New York to the Michigan bank on December 30, when the year was 364/365 over. One reason for prepayment was to assist the loaning bank, but it would be naive to fail to recognize that a substantial tax saving motive was also present in the transaction. While there was no express manipulation of the interest rate, the Commissioner points out that repayment of $1,500,000 on the $3,000,000 note as called for on January 4, 1971, would have reduced the liability for interest for the ensuing 12 months by $105,100. Thus the various factors in the revenue ruling support the Commissioner's determination. Further evidence that the Commissioner was justified in his finding of a tax avoidance motive to the transaction is the fact that the interest was prepaid by appellant for exactly 12 months, even though that date had no relationship to the time of any payment due on principal or any other logical nexus to the transaction.

Taxpayer contends that in view of the Tax Court's finding that the loan was not a sham transaction as in *Goldstein v. Commissioner,* 364 F.2d 734 (2d Cir. 1966), *cert. denied,* 385 U.S. 1005, 87 S.Ct. 708, 17 L.Ed.2d 543 (1967), but was for a legitimate business purpose, it is unfair or inequitable not to allow his deduction of prepaid interest in the year of prepayment. But if the transaction were "sham" as in *Goldstein,* the deduction would be altogether disallowed. Here the deduction has been allowed; it has simply been allocated to the tax periods in which the expense accrues. *See* 2 Mertens, *supra,* § 12.24, at 144.

Judgment affirmed.