BERNARD RESNIK AND BEVERLY RESNIK, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8610-73.    Filed April 12, 1976.

*Lawrence M. Schulner,* for the petitioners.
*Robert E. Casey,* for the respondent.

## OPINION

GOFFE, *Judge:* The Commissioner determined a deficiency in the Federal income tax of petitioners for the taxable year 1969 in the amount of $15,135.30. The sole issue for decision is whether petitioners are entitled to deduct their claimed distributive share of a partnership loss produced by the prepayment of interest by the partnership for a period in excess of 4 years.

All of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein and adopted as our findings. The case has been submitted under Rule 122 of the Tax Court's Rules of Practice and Procedure.

Petitioners Bernard and Beverly Resnik, husband and wife, resided in Chicago, Ill., at the time of the filing of their petition. They filed a joint Federal income tax return for the taxable year 1969 with the Internal Revenue Service.

During the taxable year 1969, petitioner Bernard Resnik (hereinafter referred to as petitioner) was a limited partner in the San Jose Co., an Illinois limited partnership. The San Jose Co. was one of 30 related limited partnerships associated with Capital Concepts Corp., a California corporation, in a 1969 real estate transaction. At all times material herein, Lawrence M. Schulner, Alvin B. Glatt, and N. C. Van Berkel were, respectively, president, vice president, and manager of Canadian Operations of Capital Concepts. The San Jose Co. and 29 related partnerships were formed on December 31, 1969, in either Illinois (16), California (13), or Canada (1). Schulner was the general partner of the 13 partnerships formed in California. Glatt was the general partner of the 16 partnerships formed in Illinois, including the San Jose Co., Van Berkel was the general partner for the partnership formed in Canada.

During 1969 Capital Concepts entered into certain purchase agreements with the owners of improved real properties situated in Texas. The Texas properties consisted of eight apartment complexes containing a total of 892 units. These real estate transactions involved the sale of the Texas properties to Capital Concepts and then, simultaneously therewith, the sale of all or substantially all of the same Texas properties from Capital Concepts to the 30 related partnerships. The escrow "closing date" for these simultaneous sales was on December 31, 1969. The simultaneous transactions between Capital Concepts and

each of the 30 related partnerships were identical in most material respects.

In accordance with the terms of the several sales agreements, all or substantially all of the money that was paid by the 30 related partnerships to Capital Concepts on December 31, 1969, was characterized and treated as "prepaid interest" and totaled the sum of approximately $3,257,330. The San Jose Co. purchased a 3.333 percent undivided interest in the Texas properties from Capital Concepts for a total consideration of $296,080. The terms of the sale required, inter alia, payment by the San Jose Co. to Capital Concepts as follows:

(a) $10,000 downpayment (to be applied to principal);

(b) The execution of a promissory note, secured by a deed of trust, in the amount of $286,080 and bearing interest at the rate of 9.62 percent per annum, with payments of $2,083.34 per month until paid in full; and,

(c) A $115,000 payment of prepaid interest, representing interest for a period of approximately 4 years and 3 months.

The San Jose Co. was formed with one general partner and nine limited partners. The total capital contribution of the nine limited partners was $125,000. The general partner made no capital contribution. The petitioner's capital contribution was $40,000, which represented a 32-percent interest in the San Jose Co. Pursuant to the agreement of sale of an undivided interest in the Texas properties from Capital Concepts to the San Jose Co., the San Jose Co. paid to Capital Concepts $115,000 as a prepaid interest payment for an approximate period of 4 years and 3 months. This $115,000 payment was made on December 31, 1969, which was the day the partnership commenced business and was the first and last day of its initial taxable year. The interest was paid solely out of the capital contributed by the limited partners.

On the partnership return of income (Form 1065) filed for the initial taxable year, beginning and ending on December 31, 1969, the San Jose Co. reported an ordinary loss of $115,000. The ordinary loss consisted entirely of the prepaid interest expense deduction claimed on the same return. This was the only expense incurred or paid by the San Jose Co. for its initial taxable year beginning and ending on December 31, 1969. The interest expense deduction of $115,000 represented the December 31,

1969, payment of the San Jose Co. to Capital Concepts of prepaid interest for an approximate period of 4 years and 3 months.

The San Jose Co. employed the cash receipts and disbursements method of accounting in the computation of its taxable income and in maintaining its books and records.

On the 1969 joint Federal income tax return of petitioners they claimed a $36,800 deduction representing petitioner's distributive share of the $115,000 partnership loss of the San Jose Co. for the taxable year ended December 31, 1969. Petitioners' capital investment in the partnership was $40,000. On their joint Federal income tax return for 1969, petitioners reported $20,836 adjusted gross income and $10,426 taxable income. The Commissioner, in his statutory notice of deficiency, disallowed the loss of $36,800 and determined—

that the prepaid interest deducted by the San Jose Co. partnership for the year ended Dec. 31, 1969, represented interest for a period extending more than 12 months beyond the taxable year of payment, therefore, materially distorting income. The deduction taken by the San Jose Co. partnership has been disallowed. On your return for year ended Dec. 31, 1969 you deducted $36,800.00 as your share of the loss from San Jose Co. partnership. Since the prepaid interest deducted by that partnership has been disallowed and the partnership loss is eliminated, the deduction taken by you is disallowed.

Petitioners assert that they are entitled to deduct their entire distributive share of the San Jose Co. partnership loss. The loss is due solely to the prepayment of interest for 4 years and 3 months, paid on the only day of the partnership's initial taxable year which began and ended on December 31, 1969. Petitioner's assertion is based on three alternative grounds: (1) The San Jose Co. partnership's taxable income was not materially distorted by the interest payment; (2) even if the partnership's taxable income was materially distorted, petitioner's income was not materially distorted; and (3) disallowance of the interest expense and resulting loss would result in an inaccurate reflection of petitioners' income because they report their income and claim their deductions on the cash receipts and disbursements method of accounting. Petitioners rely on *John D. Fackler,* 39 B.T.A. 395 (1939); *Court Holding Co.,* 2 T.C. 531 (1943), revd. and remanded 143 F.2d 823 (5th Cir. 1944), revd. 324 U.S. 331 (1945); *L. Lee Stanton,* 34 T.C. 1 (1960), to support their contention that prepaid interest is deductible and that a denial of the deduction would improperly place taxpayer on the accrual

method of accounting as to that item on their return while leaving them on the cash method of accounting as to the other items on the return. Respondent contends that the prepaid interest should be disallowed because it results in a material distortion of both the partnership income and petitioners' taxable income.

Section 163(a) provides that "There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." The $115,000 payment is concededly interest and respondent has not challenged the characterization of the payments as being anything other than interest. Compare *Kenneth D. LaCroix,* 61 T.C. 471 (1974); *Norman Titcher,* 57 T.C. 315 (1971). Section 446(b) vests broad discretion in the Commissioner to insure that petitioner's method of accounting and "computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income." *Commissioner v. Hansen,* 360 U.S. 446 (1959); *Fort Howard Paper Co.,* 49 T.C. 275 (1967); *Photo-Sonics, Inc.,* 42 T.C. 926 (1964), affd. 357 F.2d 656 (9th Cir. 1966). Respondent has used the authority granted him under section 446(b) in making his determination that San Jose's method of accounting for the $115,000 in prepaid interest materially distorts the income of the partnership. Respondent's powers are not limited to a rejection of only an overall method of accounting but, instead, he may direct his corrective powers to the treatment of an individual item of income or expense. Sec. 1.446-1(a), Income Tax Regs.; *Peoples Bank & Trust Co.,* 50 T.C. 750 (1968), affd. 415 F.2d 1341 (7th Cir. 1969). Respondent's determination will generally not be overturned by the courts in the absence of evidence that he has abused his discretionary powers, *Schram v. United States,* 118 F.2d 541 (6th Cir. 1941); *Michael Drazen,* 34 T.C. 1070 (1960), and petitioner bears a heavy burden in establishing that abuse. *Fort Howard Paper Co., supra; Photo-Sonics, Inc., supra.*

First, we must decide whether we should examine the partnership, the partner, or both to see if the prepaid interest deduction has distorted income. There is a longstanding difference in philosophy as to whether a partnership is an entity or an aggregate of its members. The Supreme Court most recently explained the concepts as follows in *United States v. Basye,* 410 U.S. 441, 448 (1973):

Section 703 of the Internal Revenue Code of 1954, insofar as pertinent here, prescribes that "[t]he taxable income of a partnership shall be computed in the same manner as in the case of an individual." 26 U.S.C. Sec. 703(a). Thus, while the partnership itself pays no taxes, 26 U.S.C. Sec. 701, it must report the income it generates and such income must be calculated in largely the same manner as an individual computes his personal income. For this purpose, then, the partnership is regarded as an independently recognizable entity apart from the aggregate of its partners. Once its income is ascertained and reported, its existence may be disregarded since each partner must pay tax on a portion of the total income as if the partnership were merely an agent or conduit through which the income passed.

The Commissioner disallowed the prepaid interest deduction of the partnership, the San Jose Co., under the discretion granted him by section 446(b) of the Code which provides:

(b) EXCEPTIONS.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.

The language of section 446(b) quoted above refers to the *computation* of taxable income which, when considered in light of the language of the Supreme Court in *United States v. Basye, supra,* leads to the conclusion that at least some inquiry as to whether income is clearly reflected must be made at the partnership level.

The computation of taxable income at the partnership level takes into account all items of income and all deductible items in their original state. After the taxable income is computed certain items do not lose their identity when passed through to the partners; i.e., capital gains and losses, section 1231 gains and losses, charitable contributions, dividends, taxes paid to foreign countries. Sec. 702, I.R.C. 1954. The primary purpose behind this provision is that the treatment of such items on each of the partner's returns would differ because of his receipt of identical items outside the partnership which may be offset against the partnership items or because limitations are imposed on the total amount of such deductions allowable in a single taxable year.

Interest is not one of the items of partnership income that retains its identity when passed through to the partner unless it would result in an income tax liability of the partner different than if not reported by the partner separately; i.e., the effect on the retirement income credit. Sec. 1.702-1(a)(8)(ii), Income Tax

Regs. Here, no interest deduction was passed through to petitioner-partner. Petitioners claimed their share of the partnership loss; they did not claim a deduction for interest.

Section 446(b) of the Code is aimed at preventing the distortion of income. The causes for distortion include, primarily, improper accounting methods, improper accounting periods, failure to use inventories, unusual income or expense items extending over more than one accounting period, and the timing of income and expense items outside the proper accounting period. Petitioner has cited no case, nor have we found any, which focuses attention on the accounting method or accounting period at the *partner* level instead of the *partnership* level. The partnership accounting period may or may not be the same as that of all of the partners. Sec. 706(b), I.R.C. 1954. The accounting method adopted by the partnership is separate and distinct from that of the partners. Because distortion of income under section 446(b) is so closely identified with accounting methods and accounting periods and the case law on accounting methods and accounting periods consistently focuses on the partnership level, section 446(b) must, at least, first be applied to the partnership level. The method of accounting of a partnership is determined at the partnership level. *D. L. Wheelock,* 10 B.T.A. 540, 542 (1928). In *John G. Scherf, Jr.,* 20 T.C. 346, 347 (1953), in a Court-reviewed opinion we explained the significance of the partnership return which is consistent with our reasoning that we must first look at the possible distortion of income at the partnership level.

The partnership return is more than just an information return. It has consequences that go beyond the mere disclosure to the Commissioner of profits of the enterprise. For example, the method of accounting used by the partnership in keeping its books and making its returns is conclusive on the individual partners. Thus, a partner who is on the cash basis must nevertheless account for his distributive share of the profits computed by the accrual system of accounting, whether or not he has in fact received such profits, if the partnership keeps its books and reports its income on the accrual basis. *Percival H. Truman,* 3 B.T.A. 386; *Truman* v. *United States,* 4 F.Supp. 447; *Fritz Hill,* 22 B.T.A. 1079, 1083; *W. J. Burns,* 12 B.T.A. 1209; *Laurence D. Miller,* 7 B.T.A. 581, 583. Indeed, a partner is accountable for his distributive share of the profits even though state law forbids current distribution. *Heiner* v. *Mellon,* 304 U.S. 271, 280-281.

Similarly, even though the individual partner keeps his books and reports his income on a calendar year basis, he must nevertheless include his share of his partnership's income for the full fiscal year ending within the calendar year if

the partnership has elected to keep its books and file returns on a fiscal year basis. Section 188. And in computing its net income under the revenue laws, it is generally the partnership, not the individual partner, that exercises the various options open to taxpayers in computing net income under the Code. * * *

See also *E. J. Frankel,* 61 T.C. 343 (1973), affd. in an unpublished opinion (3d Cir. 1974).

In addition to the reasons stated above for an examination at the partnership level, there are practical reasons why that must be the starting point. Distortion of income and the adoption and use of an accounting method are within the control of the partnership not the partners, particularly where, as here, we have the case of a limited partner. Distortion of income by prepayment of interest is controlled by the partnership when it enters into an agreement to pay interest. A limited partner has no control over the timing of an interest payment by the partnership. Because the partnership controls the timing of the payment, a scrutiny of that payment as to whether it distorts income must, therefore, first be made at the partnership level. Moreover, if the examination were made first at the partner level to see whether the prepayment of interest by the partnership distorted the partner's income, different results might flow to the different partners, all resulting from an act of the partnership over which the limited partners had no control. Accordingly, we conclude that we must first look at the partnership level to ascertain whether the prepayment of interest results in a distortion of income.

The partnership on its 1-day initial taxable year, December 31, 1969, prepaid interest for approximately 4 years and 3 months. The interest was paid out of the capital contributed by the limited partners because the partnership had no other funds. The effect was to give petitioner-partner, on the last day of his taxable year, a deduction for a partnership loss of $36,800 for a capital contribution made the same day of $40,000. This was the result because the partnership during its 1-day initial taxable year earned no income and neither paid nor incurred any other deductible expenses. This is more than a distortion of income; it is "a distortion of non-income." Petitioners have utterly failed to show that the Commissioner abused the discretion granted to him in section 446(b) of the Code in disallowing the prepaid interest deduction to more clearly reflect income.

Having found the income of the partnership to be distorted by the prepaid interest deduction it is not necessary for us to see whether the income of petitioner-partner is distorted. We do not decide, whether, under different circumstances, the deduction of prepaid interest by a partnership may not materially distort the income of the partnership but, nevertheless, might distort the partner's income necessitating an examination for distortion at the partner level.

Petitioners rely upon *John D. Fackler,* 39 B.T.A. 395 (1939); *Court Holding Co.,* 2 T.C. 531 (1943), revd. and remanded 143 F.2d 823 (5th Cir. 1944), revd. 324 U.S. 331 (1945); *L. Lee Stanton,* 34 T.C. 1 (1960). In *Andrew A. Sandor,* 62 T.C. 469 (1974), a Court-reviewed case, we rejected petitioner's contentions as to the applicability of those cases on identical grounds urged by petitioner here.

We reaffirm our decision in *Andrew A. Sandor, supra,* as we have consistently continued to do in *G. Douglas Burck,* 63 T.C. 556 (1975), affd. 533 F.2d 768 (2d Cir. 1976, 37 AFTR 2d 76-1009, 76-1 USTC par. 9283); *James V. Cole,* 64 T.C. 1091 (1975); *S. Rex Lewis,* 65 T.C. 625 (1975). Petitioner here has presented nothing new or novel other than what was argued in *Sandor* except the partnership vs. partner distortion question which we have decided here.

*Decision will be entered for the respondent.*