BENDERSON DEVELOPMENT CO., INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Benderson Development Co. v. Commissioner
Docket No. 10320-77.
United States Tax Court
T.C. Memo 1979-119; 1979 Tax Ct. Memo LEXIS 410; 38 T.C.M. (CCH) 540; T.C.M. (RIA) 79119; March 29, 1979, Filed *410 Petitioner was the 95-percent limited partner, and AM was the 5-percent general partner, in K partnership. K purchased a shopping center from AR (an affiliate of AM), giving cash and a mortgage to AR. On March 29, 1974, K paid to AR interest for the 13-month period March 1, 1974, through March 31, 1975, borrowing most of the funds therefor from AM. K's first taxable period was March 1, 1974, through March 31, 1974, and K filed a return for that period using the cash method of accounting. For that period K had $34,515 income and deducted the $556,575 interest payment and $9,363 of other expenses. Held: respondent may apply section 446(b) at the partnership level. Van Raden v. Commissioner, 71 T.C.     (1979); Resnik v. Commissioner,66 T.C. 74 (1976), affd. per curiam 555 F.2d 634 (CA7 1977), followed. Held further: respondent did not abuse his discretion under section 446(b) by disallowing deduction of 12/13's of K's 13-month interest payment. Donald J. Holzman, for the petitioner. David R. Smith, for the respondent. CHABOT
MEMORANDUM OPINION CHABOT, Judge: Respondent determined deficiencies in petitioner's Federal income tax as follows: Taxable Year Ended
Deficiency
March 31, 1969
$ 52,497.28
March 31, 1970
153,486.87
March 31, 1971
133,139.02
March 31, 1973
15,387.81
$354,510.98
*411 After settlement by the parties of many issues, the one issue remaining is whether respondent abused his discretion under section 446(b)[1] in disallowing a prepaid interest deduction for 1974 (see sec. 6214(b)) claimed by a partnership in which petitioner was a partner. All of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner was a corporation with its principal office in Buffalo, New York. Petitioner is a real estate development company with real estate holdings in eleven States. Most of its holdings are in western New York. Its portfolio includes industrial and commercial shopping centers and residential properties. Petitioner maintains a complete real estate development facility and staff, including financing, leasing, construction, and maintenance programs. The original cost of the real estate in petitioner's portfolio is approximately $50,000,000. Petitioner's principal trade or business activity during the early *412 1970's was developing and leasing its properties to commercial tenants. Most of the gross income reported by petitioner on its tax returns for the taxable years in that period consisted of rental receipts from its properties. During the latter part of 1973, Arlen Realty & Development Corp. (hereinafter referred to as "Arlen Realty"), a publicly owned real estate corporation engaged in development, ownership, construction, operation, leasing, and sale of real properties, offered to sell to petitioner a limited partnership interest in a shopping center then under construction in Kenner, Louisiana. On March 1, 1974, Kentoul Associates (hereinafter referred to as "Kentoul") was organized as a limited partnership under the laws of Louisiana for a term of 50 years, for the purpose of acquiring the Kenner, Louisiana, shopping center property and the improvements thereon, and to lease space in the shopping center to commercial or mercantile tenants. Petitioner was the only limited partner in Kentoul, and has a 95-percent distributive share of the partnership profits and losses. Petitioner's initial capital contribution to Kentoul was $420,000, which consisted of $120,000 cash paid on *413 March 22, 1974, and $300,000 in notes payable to Kentoul. The general partner in Kentoul was Arlen Management Corporation (hereinafter referred to as "Arlen Management"), a subsidiary or affiliate of Arlen Realty that is in the business of operating and managing shopping centers. Arlen Management was in charge of the day-to-day operations of the partnership, had a 5-percent distributive share of the partnership profits and losses, and made an initial capital contribution to Kentoul of $21,000 cash paid in March 1974. On or about March 1, 1974, Kentoul purchased the shopping center property and improvements in Kenner, Louisiana, from Arlen Realty. The purchase price paid by Kentoul was $6,130,000. Kentoul paid $420,000 cash and gave Arlen Realty its note for $5,710,000, secured by a $5,710,000 subordinated purchase-money wrap-around mortgage bearing interest at an annual rate of 9 percent. Payments on the mortgage from March 1, 1974, through March 31, 1975, were to constitute interest payments only, at the rate of 9 percent per annum. [2] *415 Beginning on April 1, 1975, payments on the mortgage were to be made by Kentoul in monthly installments of $45,174.33, to be applied first to *414 payment of interest at an annual rate of 9 percent, and then to amortization of principal. Any unpaid balance of the mortgage principal was to be due on March 1, 1990. By check dated March 29, 1974, Kentoul paid to Arlen Realty, the mortgagee, $556,575, which represented interest payments on the mortgage for the 13-month period March 1, 1974, through March 31, 1975. [3] Interest for the period April 1, 1974, through March 31, 1975, was prepaid. The mortgage instrument did not require Kentoul to prepay the interest for that period, nor did it prohibit such a prepayment. [3] To make this $556,575 interest payment to Arlen Realty, Kentoul paid the $21,000 cash received as the initial capital contribution from Arlen Management and borrowed an additional $535,575 from Arlen Management. Kentoul's first partnership return of income, Form 1065, covered the period from the date of Kentoul's organization, March 1, 1974, through March 31, 1974. On this return, Kentoul reported its income and expenses using the cash method of accounting. On this return, Kentoul reported an ordinary loss from operations in the amount of $531,423, computed as follows: Rental income $ 34,515
Expenses: Depreciation $ 9,196
Interest
556,575
Maintenance
167
565,938
Net loss
($531,423)
On its corporate income tax return for its taxable year *416 ended March 31, 1974, petitioner claimed a deduction of $504,852 as its 95-percent distributive share of Kentoul's reported loss. Petitioner's adjusted basis of its interest in Kentoul exceeded the deduction claimed as its distributive share of Kentoul's loss. In the statutory notice of deficiency, respondent disallowed the entire deduction of $504,852 claimed by petitioner as its distributive share of Kentoul's loss for the taxable period March 1, 1974, through March 31, 1974, and determined that petitioner had gross income of $23,894 as its share of Kentoul's ordinary income for that period, because of his determination that Kentoul was not entitled to deduct the $556,575 interest payment. Respondent has modified his position, and concedes that Kentoul is entitled to deduct $42,813 in interest expense for the taxable period March 1, 1974, through March 31, 1974 (one-thirteenth of the amount claimed). Under this position, Kentoul would have an ordinary loss for the period, computed as follows: Rental income
34,515
Expenses: Depreciation
$ 9,196
Interest
42,813
Maintenance
167
52,176
Net loss
($17,661) Respondent's position is that petitioner is entitled to deduct, for its taxable year ending *417 March 31, 1974, a partnership loss of $16,778 (i.e., petitioner's 95-percent distributive share of Kentoul's loss). Respondent did not abuse his discretion in determining that twelve-thirteenths of Kentoul's March 1974 interest payment should not be deductible in Kentoul's March 1974 taxable period because allowance of the deduction would materially distort Kentoul's taxable income for that period. Petitioner argues, first, that respondent has no authority to apply section 446(b) at the partnership level. Respondent disagrees, citing Resnik v. Commissioner,66 T.C. 74 (1976), affd. per curiam 555 F.2d 634 (CA7 1977). Petitioner acknowledges that its position "is contrary to what was said in Resnik", but maintains that Resnik "is wholly incorrect on the law" (opening brief, p. 19). Petitioner argues, second, that if we agree with respondent on the first point, then Kentoul's return as filed for the taxable period March 1, 1974, through March 31, 1974, does not warrant any adjustment under section 446(b). Respondent asserts that Kentoul's prepaid interest expense deduction materially distorts its income, requiring an adjustment under section 446(b). We agree with respondent on both *418 points. [4]
Statutory framework
Section 163(a) provides that "There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." The $556,575 payment is concededly interest and respondent has not challenged the characterization of the payment as being anything other than interest. Cf. LaCroix v. Commissioner,61 T.C. 471 (1974); Titcher v. Commissioner,57 T.C. 315 (1971). Section 163 must be read in light of sections 461[5] and 446(b). [6] A cash basis taxpayer may deduct interest in the year paid unless the deduction would result in a material distortion of income. Burck v. Commissioner,533 F.2d 768 (CA2 1976), affg. 63 T.C. 556 (1975); Baird v. Commissioner,68 T.C. 115 (1977); *419 Resnik v. Commissioner,supra;Cole v. Commissioner,64 T.C. 1091 (1975), affd. 586 F.2d 747 (CA9 1978); Sandor v. Commissioner,62 T.C. 469 (1974), affd. per curiam 536 F.2d 874 (CA9 1976). Section 446(b) vests broad discretion in respondent to insure that the method of accounting and "computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income." Commissioner v. Hansen,360 U.S. 446, 467 (1959). Respondent's authority is not limited to a rejection of only an overall method of accounting but, instead, he may exercise this authority with respect to the treatment of an individual item of income or expense. Sec. 1.446-1(a)(1), Income Tax Regs. ; Burck v. Commissioner,533 F.2d at 772-773; Baird v. Commissioner,supra;Resnik v. Commissioner,supra;Cole v. Commissioner,supra;Sandor v. Commissioner,supra.The taxpayer has a heavy burden of proof in establishing that respondent abused his discretion under this provision. Baird v. Commissioner,68 T.C. at 131; Resnik v. Commissioner,66 T.C. at 78; Cole v. Commissioner,64 T.C. at 1103; Sandor v. Commissioner,62 T.C. at 477. Even if the accounting *420 method may be in accord with generally accepted accounting principles, the requirement that the accounting method clearly reflect income is paramount. Thor Power Tool Co. v. Commissioner, 439 U.S.     (1979). Applicability at partnership level
The question of whether respondent may apply section 446(b) at the partnership level was squarely addressed in Resnik v. Commissioner,supra.In an extensive analysis of the issue, the Court concluded that respondent may apply section 446(b) at the partnership level. Resnik v. Commissioner,66 T.C. at 78-81. This conclusion was explicitly *421 affirmed by the Court of Appeals for the Seventh Circuit. 555 F.2d at 636-637. The Resnik principle was again approved by this Court, unanimously, in Van Raden v. Commissioner,71 T.C. No. 97, p.36 (March 29, 1979). We see no reason to again reexamine the matter. [7] We conclude that respondent has, as he claims, authority to apply section 446(b) at the partnership level. Petitioner states (opening brief, p. 21) that Resnik does not "always, regardless of anything else" foreclose examining the situation at the partner level. It may be that we should "never say never." However, petitioner has not suggested to us any basis for such an examination in the instant case. The logic of Resnik, especially insofar as the opinion therein focuses upon the treatment of prepaid interest (66 T.C. at 79-80), applies with full force in the instant case. On this point we hold for respondent. *422 Material distortion
Kentoul paid 13 months of interest in its one-month taxable period. Deduction of the entire amount would distort Kentoul's income. Taking into account respondent's concession that one-thirteenth of the interest payment is allowable, we compare the disallowed amount ($513,762) with Kentoul's income ($34,515) and its concededly allowable deductions ($52,176). Allowance of a deduction for the disputed item would increase Kentoul's loss for the one-month period from $17,661 to $531,423. We conclude that, on the facts before us, the distortion is material. The decisions dealing with prepaid interest and adjustments by respondent under section 446(b) support, and require, our conclusion. In Burck v. Commissioner, supra, the courts upheld respondent's determination that a prepaid interest payment of $377,202 on the next-to-last day of the taxpayers' taxable year clearly distorted taxpayers' income of $1,049,388 (which included a one-time capital gain of $986,186) where the $377,202 represented interest for a one-year-and-two-day period. In Resnik v. Commissioner, supra, the disallowed prepaid interest deduction for a 51-month period was made on the one-day initial *423 taxable year of the partnership therein, for which that partnership had no income. In Cole v. Commissioner, supra, the disallowed prepaid interest deduction was made eight days before the close of the taxable year for a 40-month period. In Sandor v. Commissioner, supra, the disallowed prepaid interest deduction of approximately $38,000 for a 5-year period was made four days before the close of the taxable year for which the taxpayers had gross income of at least $300,000.A decision in the instant case that the prepaid interest payment distorted Kentoul's income when taken as a deduction is almost a foregone conclusion in light of these earlier decisions, and petitioner certainly has not met its heavy burden of proof in establishing abuse of discretion by respondent.
We note that Kentoul was not obligated, even in form, to make the 12-month prepayment of interest by March 31, 1974.Kentoul obtained no business benefit from the prepayment. Kentoul had to borrow in order to be able to make the prepayment. The funds to make the prepayment came from what has been stipulated to be "a subsidiary or affiliate" of the payee. Whatever the damning or redeeming effect of tax-oriented or business-oriented *424 motives (compare Van Raden v. Commissioner, supra, with Baird v. Commissioner, supra), nothing in the record herein presents a cogent reason for overturning respondent's exercise of discretion. On reply brief, petitioner asserts that Rev. Rul. 68-643, 1968-2 C.B. 76, represents a unilateral change in respondent's position and conflicts with this Court's position in Fackler v. Commissioner, 39 B.T.A. 395 (1939) and Court Holding Co. v. Commissioner, 2 T.C. 531 (1943), revd. and remanded 143 F.2d 823 (CA5 1944), revd. 324 U.S. 331 (1945). We do not rely upon, and have no reason to approve or disapprove Rev. Rul. 68-643. As to the current status of the Fackler and Court Holding Co. opinions on the matter before us, see Burck v. Commissioner, 533 F.2d at 773-774; Resnik v. Commissioner, 66 T.C. at 82; Sandor v. Commissioner, 62 T.C. at 474-476. On this point we hold for respondent (taking into account respondent's concession as to one-thirteenth of the disputed deduction). In order to reflect respondent's partial concession on the issue before us, as well as both parties' concessions settling the other issues, Decision will be entered under Rule 155. Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the taxable years in issue.↩
2. So stipulated (stipulation 19). The parties have not favored us with a copy of the mortgage agreement or of pertinent excerpts therefrom. We assume, because of the way the parties have argued the case, that-- (1) Kentoul was obligated to make one or more interest payments, totaling one month's worth of interest, in the period March 1, 1974, through March 31, 1974; (2) Kentoul was obligated to make one or more interest payments, totaling one year's worth of interest, in the period April 1, 1974, through March 31, 1975; (3) The total interest required to be paid for the period March 1, 1974, through March 31, 1975 was $556,575 (the amount actually paid) and not $556,725 (the $5,710,000 balance due, times 9 percent per year simple interest for 13 months); (4) The interest payment was made on or about March 29, 1974 (the date of the check), and in any event before the close of Kentoul's first taxable year; and (5) The mortgage agreement did not provide for any benefit (by way of reduced interest or otherwise) to Kentoul for prepayment of interest.
3. See footnote 2, supra.↩
4. Because of the conclusion that we reach, we need not discuss the following points presented by the parties: (1) Is respondent precluded from asserting that petitioner's income (as distinguished from Kentoul's income) is materially distorted by Kentoul's treatment of the prepaid interest? (2) If respondent is not so precluded, then-- (a) who bears the burden of proof (i.e., is that assertion new matter); and (b) is petitioner's income materially distorted by such treatment?↩
5. SEC. 461. GENERAL RULE FOR TAXABLE YEAR OF DEDUCTION. (a) General Rule.--The amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income. ↩
6. SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING. * * *
(b) Exceptions.--If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.↩
7. Petitioner asserts that Resnik "is wholly incorrect on the law" (opening brief, p. 19), and that if Resnik↩ "were re-heard today, and the proper points brought forward, the result would be contrary to that reached" (opening brief, p. 20). Petitioner has not enlightened us as to what are "the proper points".