22 F.3d 1105
 73 A.F.T.R.2d 94-1693
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Kenneth L. MULHOLLAND and, Catherine S. Mulholland,
Plaintiffs-Appellants,
v.
The UNITED STATES, Defendant-Appellee.
 No. 93-5158.
 United States Court of Appeals, Federal Circuit.
 March 18, 1994.
 
 Before RICH, Circuit Judge, SKELTON, Senior Circuit Judge, and MICHEL, Circuit Judge.
 MICHEL, Circuit Judge.
 
 DECISION
 
 1
 Plaintiffs-Appellants, Kenneth and Catherine Mulholland, filed a suit in the United States Court of Federal Claims, seeking a refund of federal income taxes assessed by the Commissioner of Internal Revenue Service against their joint income tax returns for the 1981 and 1982 tax years. The income tax refund suit stemmed from the Commissioner's determination that the method of accounting deductible interest expenses used by Quincy Associates, Limited (Quincy), a partnership in which the Mulhollands had a limited partnership share, did not "clearly reflect income" as required by section 446(b) of the Internal Revenue Code. That is, the Commissioner determined that Quincy's claimed interest expenses, and the Mulhollands' portion thereof, as allocated pursuant to the Rule of 78's, constituted nondeductible expenses in the years in issue to the extent that said interest expenses exceeded the amount allowable each year under the economic accrual method. In a decision dated May 3, 1993, Judge Reginald W. Gibson of the Court of Federal Claims agreed with the Commissioner, holding that (1) the Commissioner did not abuse his discretion in determining that Quincy's, and therefore the Mulhollands', income for taxable years 1981 and 1982 was not "clearly reflected" under the Rule of 78's method as required by section 446(b); (2) the Commissioner did not abuse his discretion in changing Quincy's accounting method from the Rule of 78's to the economic accrual method; and (3) Quincy is not entitled to utilize the benefits of Revenue Procedure 84-28 to change unilaterally its method of accounting to the economic accrual method. Mulholland v. United States, No. 645-85T (May 3, 1993). The Mulhollands now appeal. We affirm the judgment of the trial court in its entirety.
 
 DISCUSSION
 I.
 
 2
 A. Standard of Review.
 
 
 3
 It is well settled that in a tax refund suit there is a strong, rebuttable presumption of the correctness of determinations of the Commissioner. See, e.g., Welch v. Helvering, 290 U.S. 111, 115 (1933). The presumption applies to the Commissioner's determination of whether an accounting method clearly reflects income as well as what accounting method the Commissioner chooses. See Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532-33 (1979). The taxpayer has a heavy burden of overcoming the presumption and establishing his entitlement to a specific deduction. Danville Plywood Corp. v. United States, 16 Cl.Ct. 584, 593 (1989). Thus, the Commissioner's decision must be upheld unless "clearly unlawful" or "plainly arbitrary." Thor Power, 439 U.S. at 532-33. In the present case, the Mulhollands have failed to meet their heavy burden.
 
 
 4
 B. Rule of 78's does not "clearly reflect income."
 
 
 5
 The general rule governing the reporting and deduction of accrued interest is that taxpayers are entitled to "a deduction [of] all interest paid or accrued within the taxable year on indebtedness," unless otherwise provided. 26 U.S.C. Sec. 163. Section 446(b) of title 26 of the United States Code, however, limits this general rule by imposing the additional requirement that an interest deduction must be taken pursuant to a method of accounting which "clearly reflects the taxpayer's income." If the chosen method does not clearly reflect income, the Commissioner may change the taxpayer's method to one which does. Id.
 
 
 6
 The Court of Federal Claims upheld the Commissioner's determination that the taxpayers' use of the Rule of 78's does not clearly reflect income. The court found that the method of accounting utilized was (1) arbitrary, unrelated to any business purpose, and solely motivated by tax savings; (2) at odds with the actual payment of accrued interest; and (3) inconsistent with economic reality.
 
 
 7
 Appellants disagree. They argue first that, under the "all events test," "an expense is deductible for the taxable year in which all events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy," citing U.S. v. Anderson, 269 U.S. 422 (1962) and Treasury Regulation section 1.461-1(a)(2). They point out that the parties' agreement can determine when liability for interest becomes fixed, and thus, when the "all events test" has been satisfied. James Bros. Coal Co. v. Commissioner, 41 T.C. 917 (1964).
 
 
 8
 Under the terms of the Note, the parties agreed to use the Rule of 78's in a limited number of circumstances where computation of annual interest was necessary. For example, if Quincy prepaid part or all of the Note, or if FDEC, the entity to whom Quincy owed money, accelerated all amounts due under the Note (e.g., because Quincy defaulted), the interest due would be computed using the Rule of 78's. See Joint Appendix at 183 and 185. From these few enumerated exceptions, appellants infer that the parties intended interest to accrue under the Rule of 78's method for other purposes as well, including for tax purposes. Appellants draw our attention to Exhibit A to the Note, which lists the dollar amount of interest that accrues each year, and allege that these amounts, computed under the Rule 78's method, were bargained-for.
 
 
 9
 Second, appellants contend that, contrary to the lower court's findings, the economic reality at the time of the Note was consistent with the rate at which accrued interest was reported and deducted under the Rule of 78's. Both general market risks and transaction-specific risks justified the "bunching" of the interest up front, according to appellants. Specifically, in 1980, inflation reached double-digit rates and general market rates for interest were extremely high. It was not unusual for lenders to charge ordinary customers interest rates as high as 14%-23%. Appellants argue that FDEC agreed to make a loan at what would be a below market rate over the term of the loan in exchange for Quincy's agreement to accept the obligation to accrue interest in the early years at or near the then market rates of 18%-20%. In addition, transaction-specific risks, such as non-payment or delayed payment of the purchase price of their investment shares from the limited partners and fluctuating operating revenues of the shopping center during the early periods of the loan, increased the risk of the transaction in the beginning and warranted high interest rates initially and lower interest rates later on. Thus, appellants argue that the use of the Rule of 78's for computing accrued interest accurately reflected the declining nature of the risk, while the use of the economic accrual method bore no relation to Quincy's cost of borrowing in 1980.
 
 
 10
 We agree with the trial court that both these arguments are flawed. First, it appears that the "all events test" was not met in this case. The interest accruals during the early years of the loan significantly exceeded the cash payment obligations of the partnership. The partnership had no obligation to make interest payments consistent with the Rule of 78's except in the event of prepayment, an event that did not happen in 1981 and 1982 and over which the partnership had complete control.
 
 
 11
 Even if the all events test were satisfied by the parties' agreement, the fundamental requirement that income be clearly reflected is overriding. See Burck v. Commissioner, 533 F.2d 768, 772, 774 (2d Cir.1976). Thus, even if the Commissioner determined that "all events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy," if the Commissioner nevertheless found that the chosen method did not clearly reflect income, he had the authority to disallow deduction and change the accounting method used.[1] 26 U.S.C. Sec. 446(b).
 
 
 12
 Second, the weight of the evidence supports the Commissioner's and the trial court's determination that the Rule of 78's does not clearly reflect income. The use of the Rule of 78's on a long-term note such as Quincy's results in improper "bunching" of a disproportionate amount of interest to the early years of the loan and leaves a negligible amount of interest allocated to the later years. The interest on the Note as computed by appellants is 18.80% in the first full year of the loan and decreases to about 0.5% in the last year. While appellants justify this distortion in the interest rate by pointing to general market risks and transaction-market risks that existed at the time, such arguments are unpersuasive and the trial court properly so found. As Judge Gibson stated in his opinion:
 
 
 13
 [W]e hold that the mechanical application [of the Rule of 78's] is totally insensitive to traditional market forces usually considered by lending institutions. More specifically, when determining the amount of interest to be allocated to a tax year, pursuant to the Rule of 78's, taxpayers do not consider factors such as market forces, inflation, risks, and general business conditions in their allocation factors; instead, the Rule of 78's is implemented by simply taking the total interest for the loan period and multiplying said gross figure by a fraction, the numerator of which is composed of the number of remaining periods on the indebtedness and the denominator is the sum of the periods' digits for the term of the indebtedness. Prabel, 882 F.2d at 825. Nowhere in said fraction is there a factor that manifests the implication of the market interest rate, the risks associated with the transaction, or inflation....
 
 
 14
 Mulholland, slip op. at 27-28.
 
 
 15
 The lower court also correctly emphasized that the transaction between FDEC and Quincy was the result of dealings between related entities (FDEC is a general partner of the Quincy partnership), rather than an arm's length negotiation. As the lower court aptly reasoned:
 
 
 16
 Quincy contends that it could not have obtained a loan at 11.77% ... in 1980 because the interest rates in the market at that time were between 18-20%. Said contention may be true with respect to the market rate of interest as between two independent entities engaging in a similar transaction to that of Quincy and FDEC's. However, such is not the case given the evidence in this record. It has been clearly established that FDEC and Quincy are affiliated entities, in that FDEC is a general partner of Quincy. In this connection, ... "[t]he terms of the transaction including the terms the note were the result of dealings between related entities and were not the result of arms-length negotiations."
 
 
 17
 Id. at 27 n. 39. Thus, the trial court's finding that the 18.80% interest rate during the first year is disproportionately high, while the 0.5% interest rate during the last year is disproportionately low, was not clearly erroneous.
 
 
 18
 Moreover, from 1981 through 1992, the amount of interest accrued annually under the Rule of 78's exceeded the annual payments, yet, interestingly enough, no interest accrued on the unpaid amounts. Instead, the portion of unpaid interest was simply carried over, interest-free, to subsequent years. In short, while the total amount owed (principal plus unpaid accrued interest) was increasing under the Rule of 78's method of accrual, the interest expense was decreasing. This is clearly at odds with economic reality and the lower court properly so found. Id. at 30.
 
 
 19
 Finally, and most importantly, the Commissioner's determination that the Rule of 78's accounting method does not reflect income must be upheld unless it is "clearly unlawful" or "plainly arbitrary," Thor Power, 439 U.S. at 532-33. In this case, the Court of Federal Claims correctly concluded that the Commissioner did not act "arbitrarily" or unreasonably in determining that the taxpayers failed to discharge their heavy burden.
 
 
 20
 Accordingly, we affirm the trial court's ruling that the Commissioner reasonably determined that the economic accrual method, not the Rule of 78's method, "clearly reflects its income" and did not abuse his discretion in ordering Quincy to change its method of calculating interest deductions from the Rule of 78's to the economic accrual method.
 
 II.
 
 21
 In count III of the complaint, the Mulhollands seeks relief pursuant to Revenue Procedure 84-28 in the event that the court determines that Quincy's use of the Rule of 78's distorted its income. Given that we have determined that interest accrual under the Rule of 78's method distorts income, we must now address the availability of Revenue Procedure 84-28 to the Mulhollands.
 
 
 22
 As the court below concluded, Revenue Procedure 84-28 permits a taxpayer who accounts for interest on indebtedness pursuant to the Rule of 78's to change to the economic accrual method without permission from the Commissioner as otherwise required by I.R.C. section 446(e), but only if, among other things, the taxpayer files a Form 3115. Mulholland, slip op. at 34. In this case, it is undisputed that Quincy failed to file a Form 3115. As a result, Quincy failed to meet the requirements of Revenue Procedure 84-28 and is therefore entitled to no benefits thereunder.
 
 CONCLUSION
 
 23
 For the foregoing reasons, we affirm the trial court's judgment in its entirety.
 
 
 
 [1]
 Appellants themselves admit that "an accrual method of accounting must meet the clear reflection of income requirement even if it satisfies the all events test." See Plaintiffs-Appellants' Brief at 15-16