655 F.2d 980
 81-2 USTC P 9657
 Donald L. WILKERSON, Mary A. Wilkerson, Nick L. Lusich,
Jacqueline E. Lusich, Lawrence F. Devincenzi, F. Albert
Kuckhoff, Jean M. Kuckhoff, Ben Caramella, Cecile Caramella,
Maurice J. Nespor, Anita M. Nespor, Theodore E. Selden,
Lonnie A. Selden, Joseph F. McDonald, Mary G. McDonald, John
T. Hargrove and Ruth D. Hargrove, Appellees,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellant.
 No. 79-7519.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 12, 1981.
Decided Sept. 8, 1981.
Rehearing and Rehearing En Banc Denied Nov. 12, 1981.
 
 William A. Friedlander, Washington, D. C., for appellant.
 Ernest J. Maupin, II, Walther, Key, Maupin & Oats, Reno, Nev., for appellees.
 Appeal from a Decision of The United States Tax Court.
 Before MARKEY,* SCHROEDER and POOLE, Circuit Judges.
 SCHROEDER, Circuit Judge:
 
 
 1
 The Commissioner of Internal Revenue appeals from a decision of the Tax Court finding that interest remitted by the taxpayers out of an advance on loan proceeds was "paid" within the meaning of Internal Revenue Code § 163(a), 26 U.S.C. § 163(a)[1] in the year for which the interest deduction was claimed.
 
 
 2
 Appellees are members of two limited partnerships, Willowbrook Apartments (Willowbrook) and Meadows East which were formed for the purpose of developing and constructing apartment complexes. Each partnership obtained a loan in excess of $3,000,000 from Mason-McDuffie Investment Co. of Nevada (Mason-McDuffie), secured by real property and insured by the Federal Housing Authority (FHA). Although the dates of the loans differ, the underlying transactions are substantially the same.
 
 
 3
 On November 24, 1971, Willowbrook entered into a building loan agreement with Mason-McDuffie. Under the terms of the agreement Willowbrook was required to pay a financing fee of $62,526. The agreement provided that the financing fee would be advanced from the loan proceeds if not otherwise paid by Willowbrook. That same day, Willowbrook requested that Mason-McDuffie disburse $537,500.50 from the loan proceeds to cover various costs including the financing fee. Mason-McDuffie deposited the requested amount into the general checking account of Willowbrook in Valley Bank of Nevada. On November 26, 1971, Willowbrook drew a check on its account to pay the financing fee.
 
 
 4
 The building loan agreement between Meadows East and Mason-McDuffie was virtually identical to the Willowbrook agreement and was signed on December 5, 1972. The first disbursement of $311,061.24 in loan proceeds included a request for an amount sufficient to cover the $62,846 financing fee. The requested amount was deposited in the Meadows East account at the Valley Bank of Nevada on December 6, 1972. On December 6, 1972, Meadows East drew a check on its general account to pay the financing fee.
 
 
 5
 Each member of both partnerships deducted a pro rata share of the finance charge as interest paid during the year 1971 in the case of Willowbrook and 1972 in the case of Meadows East. The Commissioner disallowed these deductions. In a decision reported at 70 T.C. 240, the Tax Court found that while $7,500 of the financing fee represented a service charge and was not deductible, the remainder of the fee did constitute interest. That finding is not challenged by the Commissioner on appeal. The Commissioner's sole contention is that the interest was not deductible in the years in question because it was not paid in cash or its equivalent.
 
 
 6
 All of the taxpayers in both partnerships used the cash-basis method of accounting. A cash-basis taxpayer "pays" interest only when he pays cash or its equivalent to his lender. He does not pay the interest when he gives his lender a promise to pay cash at a future date, even if that promise is evidenced by a note. See Helvering v. Price, 309 U.S. 409, 60 S.Ct. 673, 84 L.Ed. 836 (1940). The principle is based on financial reality: the note may never be paid and if it is not paid the taxpayer has parted with nothing more than his promise to pay. Hart v. Commissioner, 54 F.2d 848, 852 (1st Cir. 1932); Don E. Williams Co. v. C. I. R., 429 U.S. 569, 579, 97 S.Ct. 850, 856, 51 L.Ed.2d 48 (1977).
 
 
 7
 In applying this rule, courts have focused on the substantive effect of the transaction. When interest is withheld from loan proceeds (a discounted loan) the taxpayer is considered to have paid by a note rather than with cash or its equivalent. Cleaver v. Commissioner, 6 T.C. 452 (1946), aff'd 158 F.2d 342 (7th Cir. 1946), cert. denied, 330 U.S. 849, 67 S.Ct. 1093, 91 L.Ed. 1293 (1947). The deduction has also been disallowed where the transaction is the equivalent of a discounted loan. For example, when the lender deposits loan proceeds in the borrower's account at the lending bank and the lender charges interest by simply debiting the borrower's loan accounts, thus reducing the amounts available to the borrower on the loans, no deduction is allowed. Heyman v. Commissioner, 70 T.C. 482 (1978), aff'd, 633 F.2d 215 (6th Cir. 1980); see also Rubnitz v. Commissioner, 67 T.C. 621 (1977).
 
 
 8
 The transactions involving Willowbrook and Meadows East are not easily distinguishable from discounted loans. According to a prearranged agreement, part of the loan proceeds were specifically earmarked as an advance for the purpose of making the interest payment. The agreements between the partnerships, Mason-McDuffie, and the FHA taken as a whole clearly contemplated an advance and repayment on the same day.[2]
 
 
 9
 In allowing the deduction, the Tax Court relied on what is now known as the Burgess rule. A careful reading of Burgess v. Commissioner, 8 T.C. 47 (1947), indicates that it involved two separate loan transactions in which the proceeds of the second loan were not earmarked for the purpose of payment of interest on the first loan. In Burgess, supra, the taxpayer borrowed approximately $200,000 from Archer & Co. with interest payable within one year. Eleven months later, he borrowed an additional $4,000 from Archer & Co., which he commingled with his other funds and used to pay a number of debts including the interest due on the first loan. The majority of the Tax Court, after noting that the transaction differed from a discounted loan in that the funds actually passed through the taxpayer's account, went on to emphasize that the purpose of the second loan was not limited to payment of interest.
 
 
 10
 The petitioner did not borrow $4,000 solely to pay his interest due to Archer & Co. This item was one of several bills due in December. The cash received by the petitioner from the proceeds of his $4,000 loan was commingled with his other funds in the trust company. Its identity was lost and it could not be traced to the payment of the interest charge .... The petitioner made a cash payment of interest as such.
 
 
 11
 8 T.C. at 50.
 
 
 12
 The Burgess rule has been the subject of some criticism.[3] In a recent en banc decision, the Fifth Circuit outlined the limits of the rule by focusing on the purpose of the second loan:
 
 
 13
 Under the code a taxpayer may be entitled to a deduction in such a situation only if the second loan was not for the purpose of financing the interest due on the first loan. If the second loan was for the purpose of financing the interest due on the first loan, then the taxpayer's interest obligation on the first loan has not been paid as section 163(a) requires; it has merely been postponed.
 
 
 14
 Battelstein v. Internal Revenue Service, 631 F.2d 1182, 1184 (5th Cir. 1980) (en banc), cert. denied, --- U.S. ----, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981). In Battelstein, the court flatly rejected a claimed interest deduction where the borrower issued a check to the lender in the amount of the interest due and the lender, in return, loaned the borrower an amount sufficient to cover the interest payment. The court found it unnecessary to consider the continued viability of the Burgess rule, as the loans at issue were "plainly for no purpose other than the repayment of interest." Id. at 1184-85.
 
 
 15
 The same conclusion must be drawn in this case. The taxpayers specifically earmarked a portion of the loan proceeds as intended for the purpose of paying the interest due. They made no showing that they had any other funds available with which to pay the interest. Compare Burck v. Commissioner, 63 T.C. 556 (1975), aff'd on other grounds, 533 F.2d 768 (2d Cir. 1976). The fact that the loan proceeds were run through the taxpayers' bank account in a transaction intended to take not more than one business day, does not affect the substance of the transaction. As the Supreme Court stated some years ago, "a given result at the end of a straight path is not made a different result because reached by following a devious path." Minnesota Tea Company v. Helvering, 302 U.S. 609, 613, 58 S.Ct. 393, 395, 82 L.Ed. 474 (1938). See also Parks v. United States, 434 F.Supp. 206 (N.D.Tex.1977) (disallowing deduction in similar transaction without discussion of whether funds were temporarily placed in separate account).
 
 
 16
 Our case differs from those situations in which a separate loan from a third party is used to pay interest. McAdams v. Commissioner, 15 T.C. 231 (1950), aff'd, 198 F.2d 54 (5th Cir. 1952); Crain v. Commissioner, 75 F.2d 962 (8th Cir. 1935). In the third party situation, a deduction may be appropriate because the obligation between the borrower and the original lender has not merely been postponed, it has been extinguished. In contrast, where the taxpayer borrows money from the same lender for the express purpose of "satisfying" his interest obligation, that obligation, in a different form, remains the same. See Battelstein v. Commissioner, 631 F.2d at 1184 n.3.
 
 
 17
 The decision of the Tax Court is reversed and remanded for a recalculation of deficiencies due.
 
 
 
 *
 Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation
 
 
 [1]
 26 U.S.C. § 163(a) provides:
 There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.
 
 
 [2]
 As a condition of both loans, the financing fee was to be paid to Mason-McDuffie at the time of the initial endorsement of each promissory note by the FHA. In fact, Meadows East paid the fee one day after FHA endorsement and Willowbrook's payment was delayed two days. Mason-McDuffie was unable to explain this discrepancy. It does not change the fact that the initial agreements contemplated a one day transaction
 
 
 [3]
 In Burgess itself, six judges dissented on the grounds that "when a taxpayer, on a cash basis, borrows money from a creditor with which he pays interest upon a debt owed to that creditor, there has been no cash payment of interest which is deductible from gross income." 8 T.C. at 51. That dissent was noted with approval by the First Circuit in dictum. Goodstein v. Commissioner, 267 F.2d 127 (1st Cir. 1959). Again, in Burck v. Commissioner, 63 T.C. 556 (1975), aff'd on other grounds, 533 F.2d 768 (2d Cir. 1976), Judge Oakes, in affirming on other grounds, expressed his opinion (in dictum) that the shuttling of funds between banks did not constitute the payment of interest. Id. at 770 n.3