JOHN G. WOOD and ELLA P. WOOD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wood v. Commissioner
Docket No. 2767-78
United States Tax Court
T.C. Memo 1983-488; 1983 Tax Ct. Memo LEXIS 298; 46 T.C.M. (CCH) 1113; T.C.M. (RIA) 83488; August 16, 1983. E. Jackson Boggs,John M. Stipanovich,John P. Higgins, and Andrew J. Lubrano, for the petitioners. Lewis J. Hubbard, for the respondent. WILBUR
MEMORANDUM OPINION WILBUR, Judge: Respondent determined deficiencies in petitioner's Federal income tax returns as follows: Taxable Year
Deficiency
1971
$ 4,969.17
1973
44,743.35
1974
14,756.11
Total
$64,468.63
The sole issue presented for our decision is whether petitioners are entitled to deduct certain "closing charges" incurred in connection with various bank loans as interest paid within the meaning of section 163. [1]
This case was submitted fully *299 stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and exhibits are incorporated herein by this reference. Petitioners John G. and Ella P. Wood, husband and wife, resided in Winter Haven, Florida when they filed their petition. Petitioners filed their joint income tax returns for the taxable years 1973 and 1974 with the Southeast Internal Revenue Service Center in Chamblee, Georgia. In 1972, 1973, and 1974 petitioners entered into various commercial loan transactions with the First Federal Savings & Loan Association in Tampa (First Federal). On December 12, 1972, petitioners borrowed $900,000 from First Federal. First Federal then deducted certain charges from the principal amount of the loan prior to depositing the net proceeds of the loan in petitioners' construction account with the bank. Among these charges is a closing charge in the amount of $22,500. Petitioners used the net proceeds of the loan to construct a 72-unit apartment complex known as Regency Phase V. On January 30, 1973, petitioners borrowed $2,000,000 from First Federal. First Federal again deducted certain charges from the principal of the loan prior *300 to depositing the net proceeds of the loan in petitioners' construction account. Among these deductions was a closing charge of $30,000. The petitioners utilized the net proceeds of the loan to acquire and develop a parcel of property as a golf course to be known as Cypress Wood. On June 27, 1973, petitioners borrowed $1,100,000 from First Federal, which again deducted certain charges from the principal amount of the loan prior to depositing the net proceeds in petitioners' construction account. The closing charge for this loan was $27,500. Petitioners used the net proceeds of the loan to construct a 72-unit apartment complex known as Regency Phase VI. On December 26, 1973, petitioner Ella P. Wood (hereinafter Ella) drew three checks payable to First Federal. One check in the amount of $22,500 related to the loan closed on December 12, 1972. The other two checks in the amounts of $30,000 and $27,500 related to the loans closed on January 30, 1973 and June 27, 1973, respectively. On the same day Ella delivered the three checks to First Federal. First Federal applied these checks to an account denominated "The exchange of check account." Simultaneously with the delivery *301 by Ella of the above checks, First Federal drew a check payable to petitioners in the amount of $80,000, representing a reimbursement of petitioners' three checks. On their 1973 Federal income tax return, petitioners claimed deductions for interest in the amount of $80,000, representing the closing charges with respect to the above loans. On January 31, 1974, petitioners borrowed $1,400,000 from First Federal. First Federal then deducted certain charges from the principal amount of the loan prior to depositing the net proceeds in petitioners' construction account. Among these charges is a closing charge of $28,000. Petitioners used the net proceeds of the loan to purchase certain partnership interests in property known as Georgetown Square Apartments, Lake Wales. On February 7, 1974, petitioners borrowed $1,050,000 from First Federal. First Federal then deducted $26,250 from the principal amount borrowed prior to depositing the net proceeds in petitioners' construction account. The petitioners utilized the net proceeds of this loan to construct Regency Apartments Phase VII. On February 7, 1974, Ella delivered two checks payable to First Federal in the amounts of $28,000 *302 and $26,250 representing payments of the closing charges with respect to the loans closed on January 31, 1974 and February 7, 1974, respectively. Also on that date, First Federal drew two checks payable to petitioners, both of which represented reimbursement of petitioners' two checks. On July 12, 1974, petitioners borrowed $470,000 from First Federal. First Federal then deducted $14,100 from the principal amount as a closing charge, with the net proceeds of $452,647 being deposited in a construction account. On July 12, 1974, Ella drew a check for $14,100 payable to First Federal representing payment of the closing charge of this loan. On the same date, First Federal drew and delivered a check in the amount of $14,100 payable to petitioners as a reimbursement of petitioners' check. On their 1974 Federal income tax return, petitioners deducted the closing charges with respect to these loans as interest expenses. Respondent disallowed the claimed interest deductions both for 1973 and 1974. Respondent asserts that petitioners are not entitled to the claimed interest deductions for 1973 and 1974 because petitioners, who used the cash basis of accounting, did not pay interest *303 to First Federal, but rather exchanged checks with the bank to create the appearance of an interest payment. Notwithstanding the cross-exchange of checks, petitioners maintain that the interest payments are deductible since they actually paid these amounts to their lender. We agree with respondent. [2]
For cash basis taxpayers, section 163(a) allows a deduction only for interest "paid" within the taxable year. The payment required to secure a deduction is the payment of cash or its equivalent and a taxpayer's note is not the equivalent of cash, but only a promise to pay. Don E. Williams Co. v. Commissioner,429 U.S. 569, 578, 582-583 (1977); Battelstein v. Internal Revenue Service,631 F.2d 1182, 1183-1184 (5th Cir. 1980). Interest withheld by a lender from loan proceeds is not fully deductible in the year the interest is withheld. Cleaver v. Commissioner,6 T.C. 452 (1946), *304 affd. 158 F.2d (7th Cir. 1946). Similarly, interest debited to a taxpayer's loan account with the lender is not deductible in the year of the debit. Heyman v. Commissioner,70 T.C. 482 (1978). The giving of a promissory note, having the interest withheld from the loan proceds (that is, discounting the loan), and having the interest debited to the loan account are considered indistinguishable. Heyman v. Commissioner,supra at 485, 487. Rubnitz v. Commissioner,67 T.C. 621, 627-628 (1977). Therefore, the withholding of the closing costs from the loan proceeds by First Federal at the time of the closing of each of the loans in question does not constitute payment for a cash basis taxpayer. See Beck v. Commissioner,74 T.C. 1534 (1980), affd. on other grounds 678 F.2d 818 (9th Cir. 1982). Petitioners, however, have attempted to circumvent such rule by the simple expedient of swapping offsetting checks with a friendly bank. The law leaves no doubt that a "check-swapping" shuffle does not constitute payment for tax purposes entitling a taxpayer to an interest deduction. Battelstein v. Internal Revenue Service,supra; *305 see Wilkerson v. Commissioner,655 F.2d 980 (9th Cir. 1981), revg. 70 T.C. 240 (1978); Beck v. Commissioner,supra;Rubnitz v. Commissioner,supra.
In Battelstein, a savings association lent the Battelsteins more than $3,000,000 to purchase property and also agreed to make to them, if desired, future advances of the interest costs on the loan as they became due. Each quarter the lender notified the Battelsteins of the amount of interest due on the original loan. The Battelsteins then requested an additional loan to meet this interest payment. This loan was evidenced by a new note at a higher interest rate than the original loan, with different maturity dates and secured by additional liens on the property. This additional sum of money was deposited in a bank account of the Battelsteins with another lender. The Battelsteins then "paid" the interest due by drawing a check on this account in the exact amount as the sums advanced. Quoting the frequently reiterated tax law aphorism that "[a] given result at the end of a straight path is not made a different result because reached by following a devious *306 path," ( Minnesota Tea Co. v. Helvering,302 U.S. 609, 613 (1938)), the court held that the "exchange of checks" between the Battelsteins and their lender did not extinguish the interest obligation. Rather, the court determined that the transaction was merely a surrender of notes which did not constitute a payment of interest under section 163(a). [3]
*307 Based on the principles ennunciated in Battelstein v. Internal Revenue Service,supra, the creation of this superficial payment structure does not entitle petitioners to an interest deduction under section 163. [4] The check-swapping arrangement herein clearly did not extinguish any interest obligation of petitioners. Unlike the facts in Battelstein, petitioners' scheme did not even purport to refinance interest due on the petitioners' loan from First Federal. The parties stipulated that the checks delivered to petitioners by First Federal represented a reimbursement of petitioners' checks. In fact, petitioners' checks to First Federal were deposited by the bank in an account called "The Exchange of Check Account." [5] The simultaneous exchange of checks was a nullity for tax purposes and accordingly, we hold that the asserted interest deductions with respect to the taxable years 1973 and 1974 must be denied. *308 Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. Respondent on brief is apparently willing to concede that the closing charges in the instant case constituted interest under sec. 163. Therefore, we will address the only issue in dispute herein, namely whether the exchange of checks resulted in the payment of interest within the meaning of sec. 163.↩
3. See also Wilkerson v. Commissioner,655 F.2d 980 (9th Cir. 1981), revg. 70 T.C. 240 (1978), wherein the Ninth Circuit relying on Battelstein v. Internal Revenue Service,631 F.2d 1182, 1183-1184 (5th Cir. 1980), disallowed the asserted interest deduction. In Wilkerson, the financing company, on the date of closing, advanced taxpayers' part of the loan proceeds to cover various costs including the financing fee. Upon receipt, taxpayers deposited these amounts in their checking account and a day or two later drew checks on those accounts in payment of the financing fee. In denying the deduction, the court found that the substance of the transaction was not altered by the fact that the loan proceeds were "run through the taxpayers' bank account in a transaction intended to take not more than one business day." Wilkerson v. Commissioner,655 F.2d at 983. In Rubnitz v. Commissioner,67 T.C. 621 (1977), the taxpayers contended that the substance of the withholding was no different than if the lender had deposited the full amount of the loan in the account of the borrower and the borrower had then withdrawn such funds to pay the loan fee. We responded that, even if the transaction had been so structured, the borrower never had unrestricted control over any portion of the loan proceeds, and [u]nder such conditions, a prearranged retransfer of funds, immediately after they had been deposited in [the borrower's] account, as the final step in an integrated transaction would not constitute the "payment" which gives rise to a deduction by a cash basis taxpayer. * * * [67 T.C. at 629.] Where, however, the taxpayer borrows funds from one creditor to pay another creditor, the interest is considered paid and deductible. See, e.g., McAdams v. Commissioner,15 T.C. 231 (1950), affd. 198 F.2d 54 (5th Cir. 1952). Thus, in Franklin v. Commissioner,683 F.2d 125 (5th Cir. 1982), revg. 77 T.C. 173↩ (1981), the Fifth Circuit allowed an interest deduction where the taxpayer borrowed from the lead bank to pay interest due both that bank and the other banks that had participated in loans to him. However, the taxpayer could not deduct the portion of the interest payments attributable to the lead bank's participation in the loans.
4. While this case is appealable to the Eleventh Circuit Court of Appeals, it would have been appealable to the Fifth Circuit Court of Appeals (which decided Battelstein), prior to the establishment of the Eleventh Circuit. The Eleventh Circuit has announced: [T]hat the decisions of the United States Court of Appeals for the Fifth Circuit * * * as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit * * *. [Bonner v. City of Prichard, Ala.,661 F.2d 1206, 1207↩ (11th Cir. 1981).] 5. Petitioners reliance on Burgess v. Commissioner,8 T.C. 47, 50 (1947), and Burck v. Commissioner,63 T.C. 556 (1975), affd. 533 F.2d 768 (2d Cir. 1976), is misplaced. In Burgess and its progeny, we held that interest may be considered "paid" even though the taxpayer may have paid it with money subsequently borrowed from the initial lender, so long as the money subsequently borrowed actually bassed into the hands or bank account of the taxpayer, was commingled with other funds of the taxpayer and thus became subject to the taxpayer's unrestricted control. In the instant case, however, petitioners did not even make the pretense of borrowing from First Federal to pay their interest obligations. They merely exchanged checks in their attempt to create an interest deduction. Thus, we need not determine whether petitioners had unrestricted control over the amounts received from First Federal or whether such amounts were commingled with other funds. See and compare Menz v. Commissioner,80 T.C. 1174, 1188-1189 (1983); Noble v. Commissioner,79 T.C. 751, 767, n. 14 (1982). As the Fifth Circuit stated in Battelstein v. Internal Revenue Service,supra at 1184-1185: Whether or not this criticism [of Burgess] is valid, it is clear that it is unnecessary to apply the formula here, or that if applied here in light of its purpose it could yield only one result. This is because the subsequent loans made by Gibraltar to the Battelsteins--the checks issued by Gibraltar to the Battelsteins as part of the check exchanges, in the exact amount of the Battelsteins' current interest obligations--were plainly for no purpose other than to finance the Battelsteins' current interest obligations to Gibraltar. See note 1, supra. Even under Burgess,↩ the Battelsteins' check exchanges cannot be said to have resulted in the payment of interest required for a deduction by Section 163(a).