STEVE K. SMITH AND DIANE W. SMITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 15353-87
United States Tax Court
T.C. Memo 1991-419; 1991 Tax Ct. Memo LEXIS 468; 62 T.C.M. (CCH) 605; T.C.M. (RIA) 91419; August 26, 1991, Filed *468 An appropriate order will be issued and decision will be entered under Rule 155. Held: Respondent's Motion for Partial Summary Judgment will be granted. Mitchell S. Fuerst, Jesse T. Mountjoy, and Timothy O. Shelburne, for the petitioners. Frederick W. Krieg, for the respondent. WHITAKER, Judge. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION On December 5, 1990, respondent filed a Motion for Partial Summary Judgment. In the statutory notice of deficiency, respondent determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Additions to Tax
Section
Section
Section
Year
Deficiency
6653(a)(1) [1]
6653(a)(2)
6661
1976
$ 2,440.00 1977
5,560.00
1978
29,159.00 *$ 1,457.95
1979
13,931.67
1980
132,875.47 *6,643.77
1981
47,421.13
2,371.06 **
1984
74,066.64
3,703.33 **
$ 18,516.66
*469 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation, stipulation of settled issues, and amended stipulation of settled issues, and attached exhibits are incorporated herein by this reference. Petitioners, Steve K. Smith and Diane W. Smith, husband and wife, resided in Owensboro, Kentucky, at the time their petition was filed. This case involves deficiencies determined for calendar years 1976 through 1981 and 1984. Calendar years 1976 and 1977 are involved only because of automatic adjustments to investment tax credit carrybacks. Calendar year 1978 is involved only because of an automatic net operating loss carryback adjustment. Calendar year 1979 is involved only because of a net operating loss carryback and personal exemptions adjustments, both automatic. For 1980 through 1984, there are adjustments which resulted in deficiencies for 1980, 1981, and 1984. Certain adjustments were conceded, admitted, or settled by the parties. [2] In the petition, petitioners conceded that respondent's adjustment with respect to Patricia Coal Program Partnership in the amount of $ 73,961 for the 1982 taxable year is correct. Petitioners also conceded *470 that the adjustment with respect to the Temple Coal Program Partnership in the amount of $ 75,348 for the 1982 taxable year is correct. In the petition, petitioners admitted that they were partners of Loch Raven and Smith and Smith Partnerships. In the stipulation of settled issues, the parties agreed to dispose of the issues pertaining to these partnerships. In an amended stipulation of settled issues, petitioners agreed that the determination as set forth in the statutory notice of deficiency *471 at adjustment (g) with respect to guaranteed payments is correct. In the statutory notice of deficiency, respondent adjusted petitioners' taxable income in 1984, determining that petitioners had failed to report income from Amgas, Inc., in the amount of $ 5,250, and from Industrial Propane in the amount of $ 15,583.60. In the petition, petitioners asserted that this nonemployee compensation was properly offset against a 1983 net operating loss carryforward. Since petitioners have not contested the receipt of this income, this adjustment is deemed conceded. In the petition, petitioners alleged that for 1980 and 1984, petitioners are entitled to the benefit of income averaging for the determination of amounts due, if any, as the provisions of income averaging are now applicable as a result of the disallowances determined by the Commissioner. In respondent's answer, respondent agreed that petitioners are entitled to the benefit of income averaging for the determination of the amounts due, if any, for 1980 and 1984. The only adjustments remaining in dispute are adjustments to two limited partnerships known as Avon Land Company Partnership (Avon) and Mark XV Company Partnership (Mark *472 XV). On petitioners' returns for the taxable years 1980 through 1982, petitioners claimed ordinary losses as their distributive shares from Avon and Mark XV. In the statutory notice of deficiency, respondent determined that Mark XV and Avon were not entitled to accrue or deduct commission and interest expenses. Respondent adjusted petitioners' distributive share of income and loss from Mark XV and Avon for those years. Respondent alleged in part that petitioners have not established that: (1) The interest paid or accrued on indebtedness was based on a bona fide indebtedness; (2) the claimed amounts arose from transactions that had a bona fide business or economic purpose or substance apart from the intended tax consequences of such transaction; (3) either partnership was in the trade or business of buying or selling interests in real estate; (4) either partnership was a dealer in real estate; (5) the transactions were not part of an arrangement to distort the reporting of income and deductions, and should not be considered a sham for tax purposes; and (6) the transactions did not artificially inflate claimed commission accruals. In their petition, petitioners admitted that they *473 were limited partners in Avon and Mark XV during the years in issue. In his amended answer, respondent affirmatively relied on the doctrine of collateral estoppel in support of his position that the partnerships are not entitled to accrue or deduct commission expenses for the sale of time-share units. Respondent alleged that the factual and legal disputes in this case which are addressed in his motion have been fully heard in a prior legal proceeding (the Florida action), [3] and that petitioners as limited partners of Mark XV and Avon are estopped from relitigating the same issue in this Court with respect to the transactions involving Leisure, Inc. (Leisure), one of the named defendants in the prior proceeding. *474 In his amended answer, in addition to the determination of the statutory notice of deficiency, respondent asserted increased deficiencies in the amounts of $ 2,521 for 1979, $ 41,706 for 1980, and $ 14,646 for 1981, in order to conform the computations of petitioners' taxable income (for Leisure and three other developers) to the factual and legal determinations made in the Florida action. Respondent further asserted increases in additions to tax resulting from the increased deficiencies under section 6653(a) in the amount of $ 2,085 for 1980, under section 6653(a)(1) in the amount of $ 732 for 1981, and under section 6653(a)(2) for 1981 in the amount of 50 percent of the statutory interest on the entire deficiency. Respondent further asserted that all of the deficiencies for all of the respective years in issue which are due to the Mark XV and Avon partnerships transactions are due to tax-motivated transactions as defined by section 6621(c)(3), and accordingly, such deficiencies constitute substantial underpayments attributable to tax-motivated transactions for purposes of computing interest payable with respect to such amounts pursuant to section 6621(c). The facts involving *475 the Florida action are set forth as follows: On April 10, 1984, Mark XV, Avon, and Time Marketing Corporation (Time) filed a complaint against Leisure, a Florida corporation doing business as Marco Resort & Club (the Club), Donald D. Hunt, R. D. Hunt, and L. Wayne Grider. The complaint was filed in the Twentieth Judicial District, Collier County Circuit Court, Collier County, Florida. On November 13, 1984, the plaintiffs amended their complaint. Essentially the original complaint and the amended complaint set forth three theories of recovery: (1) An action for breach of contract; (2) an action for foreclosure of an equitable mortgage, and (3) an action for specific performance. The case was heard before a special master. The special master made certain findings of facts which describe the transactions entered into by the parties as follows. Leisure converted the property of the Club into time-share units (units). Leisure needed cash to carry out the project of selling the units. M. Dale Palmer made a proposal to Leisure to provide the cash needed by Leisure. This proposal was incorporated into Memoranda of Understanding (contracts). Under these contracts: (1) Mr. Palmer *476 created and was a general partner of Mark XV and Avon, and a law associate of Mr. Palmer's created Time; (2) Mark XV and Avon agreed to purchase real estate in the form of units located at the Club; (3) Mark XV and Avon had the right to buy, or refuse to buy, all of the units at the Club; (4) Mark XV and Avon would pay its related company, Time, 70 percent of the retail sales value to market the units (commissions); (5) Time would subcontract with Leisure to market the units to third party purchasers, for commissions of 65 percent of the retail sales value; (6) Leisure was required to guarantee collection of the third-party notes and mortgages and was required to give Mark XV and Avon substituted units or notes and mortgages for any purchases in default. The special master also found Time was effectively controlled and directed by Mr. Palmer; that the functions of selling, reselling, and guaranteeing collection remained with the seller; a large number of units had been presold before the transactions; the risk of ownership of real property remained with the seller; the purchaser had no intention of purchasing the real estate or making payments on the real estate because he knew that *477 the units were largely presold; the transaction was "feeble fiction" motivated by tax motivations; and the partnerships set up the transactions with the developer for the partnerships' and partners' tax accounting writeoffs. The special master defined the primary issue as whether the transactions were the purchase and sale of real estate or loans. The special master's conclusions of law were as follows: (1) The Mark XV and Avon transactions were not for the purchase and sale of real estate, as to either documentation or execution; (2) the deeds or mortgages from Leisure to Mark XV and Avon were nullities; (3) the third-party defendants in foreclosure should prevail; (4) the relationship of the partnerships to Leisure was creditor/debtor and not purchaser/seller; and (5) the Mark XV and Avon transactions were loans or financing arrangements which were joint ventures. The special master filed his report on December 15, 1986, with the Collier County Court. On May 11, 1987, the Circuit Court of the Twentieth Judicial Circuit issued an order approving and adopting the findings of fact, conclusions of law, and recommendations in the special master's report. The circuit court entered *478 a final judgment in the case on April 11, 1989. In May 1989 each party filed a notice of appeal to the Second District Court of Appeal for the State of Florida. On August 10, 1989, the parties entered into a settlement agreement. Both parties filed a notice of voluntary dismissal with prejudice of appeal in November and December 1989. In December 1989 the Second District Court of Appeal upon consideration of the notices of voluntary dismissal, ordered that the case be dismissed. Mr. Smith was aware of the Florida action as early as December 1987. In December 1989 he filed a complaint in the Hendricks Circuit/Superior Court in the State of Indiana against Mr. Palmer, as general partner of Avon and Mark XV and as officer and/or director of Time, and in his individual capacity. In this complaint, Mr. Smith alleged that he received a copy of the report of the special master in the Florida action on December 28, 1987, and that the report was approved by the circuit court, but that he believed Mr. Palmer appealed the circuit court's ruling. In this case, respondent filed a request for admissions in which petitioners were asked to admit or deny that the documents pertaining to the *479 Florida action and the Indiana action were authentic. Petitioners, in their answer, admitted that the documents are authentic. OPINION In his Motion for Partial Summary Judgment, respondent contends that petitioners are collaterally estopped from alleging that respondent erred in determining a deficiency against petitioners. Respondent contends that there is no genuine issue of material fact with respect to whether petitioners should be bound by the findings of fact and conclusions of law in the report of the special master for purposes of this proceeding with respect to the business dealings of petitioners' two limited partnerships, Mark XV and Avon, insofar as they relate to Time and Leisure. [4]
*480 Summary judgment under Rule 121 is derived from Rule 56 of the Federal Rules of Civil Procedure. It is intended to expedite litigation and avoid unnecessary and expensive trials of phantom factual questions. Cox v. American Fidelity & Casualty Co., 249 F.2d 616, 618 (9th Cir. 1957); Shiosaki v. Commissioner, 61 T.C. 861, 862 (1974). A motion for summary judgment is granted only when it is shown that "there is no genuine issue * * * [of] material fact and that a decision may be rendered as a matter of law." Rule 121(b). Since the effect of granting a motion for summary judgment is to decide an issue against a party without allowing him an opportunity for trial, such action is a "drastic remedy" to be used cautiously and sparingly after a careful consideration of the case reveals that the requirements for summary judgment have clearly been met. Espinoza v. Commissioner, 78 T.C. 412, 416 (1982). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. Weinberger v. Hynson, Westcott and Dunning, Inc., 412 U.S. 609, 621-622, 37 L. Ed. 2d 207, 93 S. Ct. 2469 (1973); Adickes v. Kress & Co., 398 U.S. 144, 158-159, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970). *481 The party opposing the motion is to be afforded the benefit of all reasonable doubt, and the underlying facts contained in the record must be viewed in a light most favorable to the opposing party. United States v. Diebold, Inc., 369 U.S. 654, 655, 8 L. Ed. 2d 176, 82 S. Ct. 993 (1962). Collateral estoppel serves the dual purpose of protecting litigants from the burden of relitigating an identical issue and of promoting judicial economy by preventing unnecessary or redundant litigation. Under the doctrine of collateral estoppel, a judgment in the prior suit precludes, in the second cause of action, litigation of issues actually litigated and necessary to the outcome of the first action. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5, 58 L. Ed. 2d 552, 99 S. Ct. 645 (1979). Respondent was not a party to the Florida action. In United States v. Mendoza, 464 U.S. 154, 158, 78 L. Ed. 2d 379, 104 S. Ct. 568 (1984), the Supreme Court noted that the doctrine of collateral estoppel has been broadened beyond its common law limits by abandoning the requirement of mutuality of parties and by conditionally approving the offensive use of collateral estoppel by a nonparty to a prior lawsuit. Offensive use of collateral *482 estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant previously litigated unsuccessfully in another action against the same or a different party. United States v. Mendoza, supra at 159 n.4. In Parklane Hosiery Co. v. Shore, supra at 331, the Supreme Court concluded that the use of offensive collateral estoppel is acceptable and that the trial court should have broad discretion to determine when it should be applied. The Supreme Court noted that the general rule should be that in cases where a plaintiff could easily have joined an earlier action and did not, or where for other reasons the application of offensive estoppel would be unfair to the defendant, a trial judge should not allow it. Parklane Hosiery Co. v. Shore, supra at 331. Respondent could not have joined or intervened in the earlier action. We conclude that the use of offensive collateral estoppel by respondent would not be unfair to petitioners and is appropriate in this case. In Montana v. United States, 440 U.S. 147, 155, 59 L. Ed. 2d 210, 99 S. Ct. 970 (1979), the Supreme Court applied a three-prong test *483 in determining whether collateral estoppel was appropriate in that case. In Peck v. Commissioner, 90 T.C. 162, 166-167 (1988), affd. 904 F.2d 525 (9th Cir. 1990), this Court set forth five conditions in determining whether collateral estoppel was appropriate in that case. Respondent contends that the test in Montana is met in this case. Petitioners argue that the conditions in Peck are not met. The first condition in Peck is that the issue in the second suit must be identical to the one decided in the first suit. Peck v. Commissioner, supra at 166. The first prong in Montana is whether the issues presented in the subsequent litigation are in substance the same as those in the first case. These two requirements are essentially the same. Petitioners argue that the issues in this action are not identical to the issues in the Florida action. Petitioners contend that in order to determine whether the issue in the present action is identical to the issue in the Florida action, this Court must compare the pleadings and other materials associated with both actions. Respondent contends that the issues in *484 both actions are in substance the same. Respondent points out that the special master in his report concluded that the business transactions or dealings among Mark XV, Avon, Time, and Leisure were not what they were purported to be, i.e., sales of real estate, but were loans or financing arrangements. Respondent sets forth his claims for increased deficiencies based on the special master's findings of fact and conclusions of law. Respondent alleges that the partnerships were in the business that the special master determined. Therefore, according to respondent, the issues in both actions are in substance the same. We agree with respondent's position on this requirement. The claims in each action differ. The Florida action involved a contractual dispute while this action involves petitioners' tax liability. However, collateral estoppel applies to issues of fact or law previously litigated, even though the claims differ. Meier v. Commissioner, 91 T.C. 273, 286 (1988). The business transactions or dealings among Mark XV, Avon, Time, and Leisure were at issue in the Florida action. These transactions are at issue in this case. Upon review of the report of *485 the special master and respondent's determinations and allegations as set forth in the notice of deficiency and amended answer, we conclude that the issues in this case are in substance the same as those previously litigated in the Florida action. Montana v. United States, supra.
The second condition in Peck is that there must be a final judgment rendered by a court of competent jurisdiction. Peck v. Commissioner, supra at 166. Petitioners argue that the report of the special master which was adopted by a trial court in Florida is not the final binding authority in the Florida action. The special master's report was approved and adopted by the circuit court, a State court. Appeals to a district court of appeal were ultimately dismissed. We conclude that a final judgment was rendered by a court of competent jurisdiction. The third condition in Peck is that collateral estoppel may be invoked against parties and their privies to the prior judgment. Peck v. Commissioner, supra at 166. Respondent contends that petitioners, as limited partners of Mark XV and Avon, are controlled by the outcome of the *486 Florida action to the extent that Mr. Palmer and the two partnerships would be because petitioners are in privity with the partnerships and Mr. Palmer. Petitioners contend that they are not in privity with the previous litigants. Petitioners argue that privity via virtual representation is found in cases between the partnership and limited partner only when the limited partner is relitigating the identical issues that the partnership or the general partner previously litigated. Petitioners argue that there can be no virtual representation by Avon and Mark XV of petitioners' interest in this case because the partnerships only represented the interest of petitioners, as limited partners, in a contractual suit in the Florida action. In this case, petitioners argue that their interests are much higher because they face a significant tax liability. Petitioners finally argue that since this is a non-TEFRA case any partner who receives a statutory notice of deficiency is entitled to petition this Court for a redetermination, even where the same issue has already been redetermined with respect to another partner and should not be precluded by collateral estoppel. In Fine v. Commissioner, T.C. Memo 1989-640, *487 this Court noted that nonparties may be bound by a decision in an earlier proceeding if a party in the earlier proceeding is so closely aligned with the nonparties' interests as to be their "virtual representative." See United States v. ITT Rayonier, Inc., 627 F.2d 996, 1003 (9th Cir. 1980). Virtual representation exists where the party to an earlier proceeding is accountable to a nonparty as the result of an express or implied legal relationship. United States v. Geophysical Corp., 732 F.2d 693, 697 (9th Cir. 1984). This Court in Fine noted that the doctrine of privity for collateral estoppel purposes includes partners in litigation affecting the partnership whenever the partner in the prior litigation is the virtual representative of the partner-litigant in the subsequent litigation. [5] See United States v. Geophysical Corp., supra at 697. We conclude that the parties in the Florida action were the virtual representatives of petitioners in this action. Accordingly, we conclude that petitioners are in privity with the partnership and Mr. Palmer. *488 The fourth condition in Peck is that the parties must actually have litigated the issues and the resolution of these issues must have been essential to the prior decision. Peck v. Commissioner, supra at 167. Petitioners argue that the issues in this case were not litigated in the Florida action, and even if we decide to the contrary, the issues asserted in this case were not necessary to the judgment in the Florida action. We already determined that the issues are in substance the same in both cases. Based upon a review of the special master's report, we conclude that this requirement is met. The fifth condition in Peck is that the controlling facts and applicable legal rules must remain unchanged from those in the prior litigation. Peck v. Commissioner, supra at 167. The second prong in Montana is whether the controlling facts or legal principles have changed significantly since the first judgment. Petitioners argue that the rules of evidence and civil procedure were not applicable in the Florida action which "may have dealt a severe blow to the parties in that action, materially altering the course of events." *489 Petitioners assert that such rules are applicable in this Court. Petitioners do not argue that the controlling facts have changed, only that the rules of evidence and civil procedure were not applicable in the earlier action. This argument is not convincing. We conclude that the controlling facts or legal principles have not changed significantly since the first judgment in the Florida action. The third prong in Montana is whether other special circumstances warrant an exception to the normal rules of preclusion. In Meier v. Commissioner, 91 T.C. at 286, this Court also stated that collateral estoppel cannot apply if the party against whom it is asserted has not had a fair and full opportunity to litigate the issue for which the doctrine is being asserted in the earlier proceeding. Petitioners argue that in the Florida action there was no incentive to litigate the issues now before this Court because it was a mere contract dispute. Consequently, petitioners maintain that they and the partnerships were not given a just opportunity to litigate the issues which respondent seeks to collaterally estop petitioners from litigating. Further, petitioners maintain *490 that they could not intervene in the Florida action under the Florida Uniform Limited Partnership Act. Finally, petitioners allege that the report of the special master was motivated by a "long standing dispute with Sadoff, who served as the accountant to both the parties." We conclude that the factors argued by petitioners do not create special circumstances that would warrant an exception to the normal rules of preclusion and that petitioners, in privity with the parties in the Florida action, had a fair and full opportunity to litigate the issues for which the doctrine is being asserted in the Florida action. We hold that petitioners are bound for purposes of this proceeding by the special master's findings of facts and conclusions of law with respect to the business dealings of petitioners' two limited partnerships, Mark XV and Avon, insofar as they relate to Time and Leisure. Accordingly, we hold that there is no genuine issue of material fact or law for trial of the issues covered by respondent's Motion for Partial Summary Judgment and, therefore, respondent's Motion will be granted. An appropriate order will be issued and decision will be entered under Rule 155. Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. * For 1978 and 1980 the addition to tax is under section 6653(a),the language of which subsequently was contained in section 6653(a)(1). ** 50% of the interest payable under section 6601 with respect to the portion of the underpayment which is attributable to negligence or intentional disregard of rules and regulations.↩
2. In the petition, petitioners asserted that the statute of limitations bars assessment and collection of additional income taxes for the years in issue. In his answer and amended answer, respondent asserted that the statute of limitations did not bar assessment and collection of additional income taxes for the years in issue. In petitioners' amended reply to amended answer, petitioners conceded that the statute of limitations does not bar assessment and collection of the deficiency in income taxes for the years in issue.↩
3. The court proceeding is styled Mark XV Company, an Indiana Limited Partnership, Avon Land Company, Limited, an Indiana Limited Partnership, and Time Marketing Corporation, an Indiana Corporation v. Leisure, Inc., a Florida Corporation doing business as Marco Resort and Club, et al.↩, in the Circuit Court of the Twentieth Judicial District in and for Collier County, Florida, Case No. 84-0715-CA-01CTC. 4. Respondent's Motion for Partial Summary Judgment involves only the business transactions of Mark XV and Avon, and the estoppel of petitioners, limited partners of Mark XV and Avon. Further, respondent's Motion involves only the business transactions of Mark XV and Avon with Time and one of four developers, Leisure. The other three developers were Sebastian Resort Properties, Inc., American Triad Land Company, and Ocean Beach Development Corporation. Respondent does not contend that there can be partial summary judgment based on collateral estoppel with respect to the business transactions between Mark XV, Avon, Time, and the other three developers.↩
5. The business dealings of a partnership are determined at the partnership level and not the limited partner level. Brannen v. Commissioner, 78 T.C. 471 (1982), affd. 722 F.2d 695 (11th Cir. 1984); Resnik v. Commissioner, 66 T.C. 74 (1976), affd. per curiam 555 F.2d 634 (7th Cir. 1977); Tallal v. Commissioner, T.C. Memo 1984-486, affd. 778 F.2d 275↩ (5th Cir. 1986).